STATE OF NORTH CAROLINA v. BARRY EUGENE TAYLOR

No. COA10-551

(Filed 7 June 2011)

**1. Obstruction of Justice— misdemeanor conviction—felonious indictments—motion for appropriate relief**

The trial court did not err by denying defendant chief deputy's motion for appropriate relief based on alleged lack of jurisdiction to accept a verdict and enter a judgment convicting him of misdemeanor obstruction of justice even though the original and superseding indictments charged defendant with felonious obstruction of justice.

**2. Statutes of Limitation and Repose— misdemeanor—motion for appropriate relief—lesser-included offense**

The trial court did not err by denying defendant chief deputy's motion for appropriate relief on the grounds that the trial court permitted him to be convicted for committing a time-barred lesser-included offense. The statute of limitations set out in N.C.G.S. § 14-1 did not control the submission of the issue of defendant's guilt of a misdemeanor lesser-included offense to the jury since the greater offense was properly charged in a timely manner.

**3. Obstruction of Justice— failure to instruct—lack of legal authority**

The trial court did not err in an obstruction of justice case by denying defendant chief deputy's motion for appropriate relief on the grounds that the trial court failed to instruct the jury on the legal authority to require the processing with which defendant allegedly interfered. Defendant failed to establish that he had any right or obligation to determine that a subordinate had arrested a suspect without possessing the required probable cause and to take corrective action.

**4. Appeal and Error— preservation of issues—plain error**

The trial court did not commit plain error or error by submitting the issue of defendant chief deputy's guilt of misdemeanor obstruction of justice to the jury or by its failure to instruct the jury concerning the sufficiency of a sergeant's justification for arresting a doctor for driving while impaired.

Appeal by defendant from judgment entered 30 September 2009 by Judge A. Robinson Hassell and order entered 15 January 2010 by Judge Richard L. Doughton in Cleveland County Superior Court. Heard in the Court of Appeals 16 November 2010.

*Attorney General Roy Cooper, by Catherine F. Jordan, Assistant Attorney General, for the State.*

*Knox, Brotherton, Knox & Godfrey, by Allen C. Brotherton, for Defendant-Appellant.*

ERVIN, Judge.

Defendant Barry Eugene Taylor appeals from a judgment entered by the trial court ordering that Defendant be imprisoned for 45 days in the custody of the Sheriff of Lincoln County and suspending his sentence for 18 months on the condition that Defendant successfully complete probation, perform 20 hours of community service during the first 60 days of the probationary period, pay a $500.00 fine and the costs, and comply with the usual terms and conditions of probation based upon his conviction for misdemeanor obstruction of justice, and from an order entered by Judge Doughton denying his motion for appropriate relief. After carefully considering Defendant's challenges to the trial court's judgment and Judge Doughton's order in light of the record and the applicable law, we conclude that Defendant had a fair trial that was free from prejudicial error, that Judge Doughton did not err by denying Defendant's motion for appropriate relief, and that Defendant is not entitled to any relief on appeal.

## I. Factual Background

### A. Substantive Facts

In February 2007, Timothy Daugherty was the elected Sheriff of Lincoln County, North Carolina. Defendant was Sheriff Daughtery's chief deputy or "second in charge." As Chief Deputy, Defendant held a position superior to other departmental employees, including Sergeant Steve Dombrowski. As of the date in question, Sergeant Dombrowski had stopped more than three hundred individuals suspected of driving while impaired during a fourteen year law enforcement career. In addition, Sergeant Dombrowski had been trained in the administration of standard field sobriety tests and was certified to operate an Intoxilyzer, a device used to measure a person's blood alcohol concentration.

On 25 February 2007, Sergeant Dombrowski and two other officers set up a license checkpoint on Highway 16 in Lincoln County. The officers participating in the operation of the checkpoint stopped each approaching car, checked the operator's driver's license and the vehicle's registration, and attempted to determine whether the driver was intoxicated or whether there were open containers of alcoholic beverages in the car. Sergeant Dombrowski established the checkpoint on a straight section of Highway 16 so that drivers could see the checkpoint from a distance as they approached. Aside from the fact that the area in which the checkpoint had been established was lit by "several large street lamps," the participating officers also carried flashlights, left the lights of their patrol vehicle on, and wore reflective vests.

At approximately 12:45 a.m., Sergeant Dombrowski observed a car drive slowly past the checkpoint without stopping. As a result, he stopped the car, checked its license plate number, and determined that the vehicle was registered to Dr. Daniel Senft, who was driving the car on that occasion. Sergeant Dombrowski noticed an odor of alcohol about Dr. Senft, who acknowledged that he had consumed several alcoholic drinks before being stopped. After asking Dr. Senft to exit the vehicle in order to perform various field sobriety tests, Sergeant Dombrowski noticed that Dr. Senft steadied himself using the car door as he complied with the request.[1] Sergeant Dombrowski asked Dr. Senft to blow into his handheld Alco-Sensor, a portable device that measures an individual's blood alcohol concentration, but Dr. Senft declined to do so. After interacting with Dr. Senft for about thirty minutes, Sergeant Dombrowski formed the opinion that Dr. Senft was an impaired driver, took Dr. Senft into custody for driving while impaired, placed Dr. Senft in the rear of his patrol vehicle, and drove to the Lincoln County Sheriff's office, where he planned to ask Dr. Senft to take an Intoxilyzer test.

At the time that Sergeant Dombrowski placed Dr. Senft in his patrol car, he did not handcuff Dr. Senft or confiscate Dr. Senft's cell phone. During the trip to the Lincoln County Sheriff's Department, Dr. Senft called his wife. In the course of this call, Dr. Senft handed the phone to Sergeant Dombrowski. Mrs. Senft told Sergeant Dombrowski that her husband "worked with somebody who is dating

---

1. Although Sergeant Dombrowski did not recall how Dr. Senft performed on the field sobriety tests, Dr. Senft testified that he passed the walk-and-turn test and the one-leg stand test and Defendant told an investigator that Sergeant Dombrowski told him that Dr. Senft passed the field sobriety tests.

the person who's second in charge" at the Lincoln County Sheriff's Department. In response, Sergeant Dombrowski suggested that she call the Sheriff's Department's communications center and ask how to contact Defendant. As a result, Mrs. Senft spoke with Catherine Lafferty, an employee assigned to the communications center. Mrs. Senft told Ms. Lafferty that she was a personal friend of Defendant's and asked to have him paged. Instead of paging him, Ms. Lafferty called Defendant and gave him Mrs. Senft's phone number.

When Ms. Lafferty called Defendant, he was at home with his girl-friend, Tabatha Willis, who was employed by Dr. Senft's medical practice. Defendant told Ms. Lafferty to have Sergeant Dombrowski call him, so Ms. Lafferty relayed that message to Sergeant Dombrowski. In addition, Ms. Willis called Mrs. Senft, who told her that Dr. Senft was in custody and needed help. At that point, Defendant provided Mrs. Senft with directions to the Lincoln County Sheriff's Department and told Mrs. Senft that he would meet her there.

Sergeant Dombrowski arrived at the Sheriff's Department at around 2:00 a.m., called Defendant, and told him about the check-point and the reason for Dr. Senft's arrest. Upon his own arrival at the Sheriff's Department, Defendant took Dr. Senft into his office. About twenty minutes later, Defendant emerged from his office and asked Sergeant Dombrowski to retrieve the Alco-Sensor device from his patrol vehicle. After Sergeant Dombrowski complied with this request, Defendant took the Alco-Sensor into his office, where he remained with Dr. Senft for approximately twenty additional minutes. At that point, Defendant came out of his office, informed Sergeant Dombrowski that Dr. Senft had blown a .07 on the Alco-Sensor, and said that Dr. Senft had been released. Dr. Senft testified that Sergeant Dombrowski told him that he "did fine" on the field sobriety test the officer administered, and also testified that Defendant administered field sobriety tests. Dr. Senft was not charged with any offenses and left the law enforcement center with his wife shortly thereafter.

In deciding to release Dr. Senft, Defendant did not administer an Intoxilyzer test, bring Dr. Senft before a magistrate, or discuss the situation with Sergeant Dombrowski. Defendant was not a certified Intoxilyer operator and had never been trained to use an Alco-Sensor. Defendant did not show Sergeant Dombrowski the results of the Alco-Sensor screen which he claimed to have administered to Dr. Senft. According to a statement that Defendant made to an investigator with the State Bureau of Investigation, the release of Dr. Senft was the only time he had intervened in connection with an arrest made by

another officer. Even so, Defendant told an investigator that he had released Dr. Senft because he had concerns about whether there was probable cause to believe that Dr. Senft was guilty of driving while impaired.

### B. Procedural History

On 13 July 2009, the Lincoln County grand jury returned a bill of indictment charging Defendant with felonious obstruction of justice[2] by interfering with the processing of "a subject" who had been arrested for impaired driving. The grand jury returned a superseding indictment against Defendant on 10 August 2009, which differed from the original indictment by substituting Dr. Senft's name for the references to "a subject" in the original indictment. On 18 August 2009, Judge Forrest D. Bridges entered an order changing the venue for the trial from Lincoln County to Cleveland County as a result of the "degree of publicity" about the case.

The charge against Defendant came on for trial before the trial court and a jury at the 28 September 2009 criminal session of Cleveland County Superior Court. At the conclusion of the evidence, the trial court instructed the jury to determine whether Defendant was guilty of felonious obstruction of justice, guilty of misdemeanor obstruction of justice, or not guilty. On 30 September 2009, the jury returned a verdict finding Defendant guilty of misdemeanor obstruction of justice. Based upon this verdict, the trial court sentenced Defendant to forty-five days imprisonment in the Lincoln County jail, suspended Defendant's sentence, and placed Defendant on supervised probation for eighteen months on the condition that he complete 20 hours of community service within the first 60 days of the probationary period, pay a $500 fine and the costs, and comply with the usual terms and conditions of probation.

On 12 October 2009, Defendant filed a motion for appropriate relief in which he requested that the court strike the verdict, arrest judgment, and dismiss the charge against him. In support of his motion for appropriate relief, Defendant alleged, in pertinent part, that:

1. The statute of limitations had run as to the misdemeanor charge upon which the judgment was entered[.]

2. The Indictment and Superseding Indictment did not charge a legally cognizable felony offense and the Superior Court did

---

2. In the absence of an explicit statement to the contrary, references to "obstruction of justice" throughout the remainder of this opinion are to common law obstruction of justice rather than to any statutorily-defined offense.

not have jurisdiction in this matter. Obstruction of justice by obstructing an officer in the discharge of a lawful duty as alleged herein cannot be a felony. . . . [T]he legislature has supplanted the common law as to the alleged acts of defendant by enacting N.C. [Gen. Stat. §] 14-223[.]

3. The evidence, at the close of all the evidence, was insufficient to justify submission of the case to the jury[.]

After providing the parties with an opportunity to be heard, Judge Doughton entered an order denying Defendant's motion on 15 January 2010. Defendant noted an appeal to this Court from the trial court's judgment and the denial of his motion for appropriate relief.

## II. Legal Analysis

### A. Standard of Review

On appeal, Defendant argues that Judge Doughton erred by denying his motion for appropriate relief on the grounds that (1) the trial court lacked subject matter jurisdiction over the charged offense; (2) the misdemeanor obstruction of justice charge of which Defendant was convicted was barred by the statute of limitations; and (3) the trial court "failed to instruct the jury on the lack of legal authority to require the processing with which Defendant allegedly interfered." In addition, Defendant argues that the trial court committed plain error by submitting the issue of Defendant's guilt of misdemeanor obstruction of justice to the jury and by failing to instruct on the defense of "lack of legal authority to require the processing with which Defendant allegedly interfered."

### 1. Denial of Motion for Appropriate Relief

We review a trial court's ruling on a motion for appropriate relief "to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982). " 'When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion. However, the trial court's conclusions are fully reviewable on appeal.' " *State v. Lutz*, 177 N.C. App. 140, 142, 628 S.E.2d 34, 35 (2006) (quoting *State v. Wilkins*, 131 N.C. App. 220, 223, 506 S.E.2d 274, 276 (1998) (internal citations omitted)). As a result of

the fact that the issues raised by Defendant's challenge to Judge Doughton's decision to deny his motion for appropriate relief are primarily legal rather than factual in nature, we will essentially use a *de novo* standard of review in evaluating Defendant's challenges to Judge Doughton's order.

### 2. Instructional Issues

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). "In criminal cases, [however,] an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4).

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," . . . or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings[.]"

*State v. Odum*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). As a result, plain error review involves the use of "a higher standard, *i.e.*, that a different result 'probably would have been reached but for the error.' " *State v. Williams*, — N.C. App. —, —, 689 S.E.2d 412, 420 (2009) (quoting *State v. Cummings*, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000) (internal quotation marks omitted), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641, 121 S. Ct. 1660 (2001)).

### 3. Default

In his brief, Defendant argues that, since the rules of appellate procedure do not apply to motions for appropriate relief and since the default provisions set out in N.C. Gen. Stat. § 15A-1419(a) assume the existence of a previous motion for appropriate relief or prior appeal, a trial judge has the authority to address legal error committed at trial despite the absence of an objection at trial unless the defend-

ant invited the trial court's error. Although Defendant's argument is not entirely clear, he appears to suggest that the absence of statutory language requiring a contemporaneous objection as a precondition for obtaining relief by means of a motion for appropriate relief coupled with the reference to invited error in N.C. Gen. Stat. § 15A-1443(c) means that the mere absence of a contemporaneous objection does not bar consideration of such a claim in connection with the resolution of the issues raised by a motion for appropriate relief filed within ten days after the entry of judgment and that we are barred from insisting upon the existence of such an objection as a prerequisite for considering a defendant's claims on the merits at the appellate level. We are not inclined to accept this construction of the relevant statutory provisions, since, in the event that we were to do so, a defendant could circumvent the contemporaneous objection requirement set out in the rules of appellate procedure by withholding an objection during the trial for tactical reasons and then seeking relief on the basis of that alleged error in a motion for appropriate relief in the event that the hoped-for tactical advantage does not materialize. However, we need not decide this issue at this time, since we conclude that, even when considered on the merits, the claims asserted in Defendant's motion for appropriate relief lack merit.

## B. Substantive Legal Issues

### 1. Subject Matter Jurisdiction

**[1]** First, Defendant argues that Judge Doughton erred in denying his motion for appropriate relief on the grounds that, "because the common law had been supplanted by statute for the conduct alleged in the superseding indictment and found by the jury under the instructions;" the trial court lacked jurisdiction to accept a verdict and enter a judgment convicting him of misdemeanor obstruction of justice. This argument lacks merit.

The initial and superseding indictments returned against Defendant charged him with felonious obstruction of justice. In *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983), the Supreme Court held that:

Obstruction of justice is a common law offense in North Carolina. Article 30 of Chapter 14 of the General Statutes does not abrogate this offense. N.C. Gen. Stat. § 4-1 (1981). Article 30 sets forth specific crimes under the heading of Obstructing Justice[.] . . . There is no indication that the legislature intended Article 30 to encompass all aspects of obstruction of justice. . . .

"At common law it is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice. The common law offense of obstructing public justice may take a variety of forms[.]"

(quoting 67 C.J.S., *Obstructing Justice* §§ 1, 2 (1978)). As a result, in order to convict Defendant of the common law offense of obstruction of justice, the State was required to demonstrate that Defendant had committed an act that prevented, obstructed, impeded or hindered public or legal justice. *Id.* Although obstruction of justice is ordinarily a common law misdemeanor, N.C. Gen. Stat. § 14-3(b) provides that, "[i]f a misdemeanor offense as to which no specific punishment is prescribed be infamous, done in secrecy and malice, or with deceit and intent to defraud, the offender shall . . . be guilty of a Class H felony." For that reason, "[u]nder N.C. Gen. Stat. § 14-3(b) (1979), for a misdemeanor at common law to be raised to a Class H felony, it must be infamous, or done in secret and with malice, or committed with deceit and intent to defraud. If the offense falls within any of these categories, it becomes a Class H felony and is punishable as such." *State v. Clemmons*, 100 N.C. App. 286, 292, 396 S.E.2d 616, 619 (1990) (citing *State v. Mann*, 317 N.C. 164, 169-70, 345 S.E.2d 365, 368-69 (1986)).

The superseding indictment returned against Defendant alleged that "on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did

obstruct justice by interfering with an arrest of Daniel Scott Senft for the charge of driving while impaired by Deputy Steven J. Dombrowski of the Lincoln County Sheriff's Office.

Deputy Dombrowski had taken Daniel Senft from the place where Deputy Dombrowski had stopped Daniel Senft to the Lincoln County Sheriff's Office following the arrest of Daniel Senft for the purpose of performing a chemical analysis on the person of Daniel Senft. Before Deputy Dombrowski could perform the chemical analysis or complete any other investigation into the matter, the Defendant took custody of Daniel Senft from Deputy Dombrowski[,] thereby preventing Deputy Dombrowski from offering the chemical analysis to Daniel Senft or performing any other acts necessary to complete his duties with respect to the arrest of Daniel Senft.

The actions of the Defendant described above were infamous, done in secrecy and malice, or with deceit and intent to defraud.

Defendant does not dispute that this superseding indictment adequately alleges facts that, if proven, would allow a jury to find the existence of all of the elements of obstruction of justice or argue that it lacks the averments necessary to elevate common law obstruction of justice from a misdemeanor to a felony. Instead, Defendant argues that the indictment alleges acts that must be prosecuted, if at all, as a misdemeanor under N.C. Gen. Stat. § 14-223:

> [I]t is defendant's position that: 1) by enacting N.C. [Gen. Stat.] § 14-223, the legislature has unequivocally stated its intention that the conduct alleged in the Superseding Indictment, obstructing justice by preventing an officer from performing his duty, is to be punished as a Class 2 misdemeanor, and 2) therefore the state cannot charge that conduct as a class H felony under the generic charge of common law obstruction of justice and N.C. [Gen. Stat.] § 14-3. The specific controls the general, and what has been supplanted by N.C. [Gen. Stat.] § 14-223 is the ability of the State to charge interference with an officer in the performance of his duties as a felony. . . . The indictment does not allege any additional elements that would place defendant's conduct outside the coverage of N.C. [Gen. Stat.] § 14-223.

Put another way, the essence of Defendant's argument is that: (1) the superseding indictment alleged facts that, if proven, would have established a violation of N.C. Gen. Stat. § 14-223, which penalizes resisting, delaying or obstructing an officer; (2) because there is a specific statute that addresses Defendant's alleged behavior, the State lacked the authority to prosecute him for felonious common law obstruction of justice; and, for that reason, (3) the trial court lacked subject matter jurisdiction over the felonious common law obstruction of justice charge. We disagree.

The fundamental defect in Defendant's argument is its premise that the existence of a statutorily-defined criminal offense necessarily deprives the State of the ability to prosecute a defendant for a common law offense applicable to the same or similar conduct. This Court has expressly rejected the logic upon which Defendant's argument rests. In *State v. Wright*, —— N.C. App. ——, 696 S.E.2d 832 (2010), we upheld a defendant's conviction for felonious obstruction of justice despite the fact that the defendant's alleged conduct also

fell within the confines of a statutorily-defined misdemeanor. More particularly, the defendant in *Wright* was convicted of felonious obstruction of justice based upon his failure to file complete and accurate campaign finance reports with the State Board of Elections. On appeal, the defendant argued that the State could have charged him with misdemeanor failure to file accurate campaign reports in violation of N.C. Gen. Stat. § 163-278.27 and that "allowing the common law charge in effect permitted the State to sidestep the statute of limitations that barred it from proceeding under N.C. Gen. Stat. § 163-278.27 for the reports filed between 2000 and 2005." *Wright,* ⎯ N.C. App. at ⎯, 696 S.E.2d at 837. In rejecting Defendant's argument, we held that:

> Defendant . . . cites no authority that precludes the district attorney from proceeding on a common law charge when a potentially applicable statutory charge is barred by the statute of limitations or could result in a lesser sentence. . . . [P]ursuant to Article IV, Section 18 of our Constitution, " 'the responsibility and authority to prosecute all criminal actions in the superior courts is vested solely in the several District Attorneys of the State.' " That authority includes "[t]he ability to be selective in determining what cases to prosecute and what charges to bring against a particular defendant[.]" The district attorney, in this case, was entitled to elect to proceed under the common law rather than under the campaign finance statutes.

*Id.* (quoting *State v. Ward,* 354 N.C. 231, 243, 555 S.E.2d 251, 260 (2001) (quoting *State v. Camacho,* 329 N.C. 589, 593, 406 S.E.2d 868, 871 (1991))). As a result, we conclude that, even if Defendant could have been charged with resisting, delaying or obstructing an officer in violation of N.C. Gen. Stat. § 14-223, this possibility does not bar the State from proceeding against Defendant on a charge of felonious common law obstruction of justice instead. Thus, Defendant's challenge to the trial court's subject matter jurisdiction lacks merit.

### 2. Statute of Limitations

[2] Secondly, Defendant argues that the trial court erred by denying his motion for appropriate relief on the grounds that the trial court's decision to allow the jury to consider the issue of his guilt of misdemeanor obstruction of justice erroneously permitted him to be convicted for committing "a time-barred lesser-included" offense submitted "at the State's request" despite the fact that "the State intentionally failed to advise the court that the statute of limitations

had run." In response, the State argues that, even though the statute of limitations had expired on the misdemeanor charge, Defendant waived this claim by failing to object to the submission of misdemeanor obstruction of justice to the jury at trial. Although the trial court rejected this aspect of Defendant's motion for appropriate relief on waiver grounds, we need not address the waiver issue given our conclusion that the statute of limitations applicable to misdemeanor offenses does not apply when the issue of a defendant's guilt of a misdemeanor offense is submitted to the jury as a lesser included offense of a properly charged felony.

"[S]tatutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide 'the primary guarantee against bringing overly stale criminal charges.' " *State v. Goldman*, 311 N.C. 338, 343, 317 S.E.2d 361, 364 (1984) (quoting *United States v. Lovasco*, 431 U.S. 783, 788-89, 52 L. Ed. 2d 752, 758, 97 S. Ct. 2044, 2048 (1977)). "In this State no statute of limitations bars the prosecution of a felony." *State v. Johnson*, 275 N.C. 264, 271, 167 S.E.2d 274, 279 (1969) (citing *State v. Burnett*, 184 N.C. 783, 115 S.E. 57 (1922)). However, "North Carolina has adopted a two year statute of limitations for misdemeanors.

> Our legislature has specifically provided that: "All misdemeanors except malicious misdemeanors, shall be presented or found by the grand jury within two years after the commission of the same, and not afterwards[.] . . . . N.C. [Gen. Stat.] § 15-1 (1983) . . . . Our courts have consistently construed this language, which has not been altered since its adoption in 1826, to mean that either an indictment or a presentment issued by a grand jury within two years of the crime alleged 'arrests the statute of limitations.' "

*State v Whittle*, 118 N.C. App. 130, 133-34, 454 S.E.2d 688, 690 (1995).

"In criminal cases where an indictment or presentment is required, the date on which the indictment or presentment has been brought or found by the grand jury marks the beginning of the criminal proceeding and arrests the statute of limitations." *State v. Underwood*, 244 N.C. 68, 70, 92 S.E.2d 461, 463 (1956) (citing N.C. Gen. Stat. § 15-1 and *State v. Williams*, 151 N.C. 660, 65 S.E. 908 (1909)). As a result, the running of any applicable statute of limitations is tolled by the issuance of a valid criminal process. Although "[N.C. Gen. Stat. §] 15-1 contains no reference to warrants[, in] *State v. Underwood, supra,* it was held 'that in all misdemeanor cases, where there has been a conviction in an inferior court that had final

jurisdiction of the offense charged, upon appeal to the Superior Court the accused may be tried upon the original warrant and that the statute of limitations is tolled from the date of the issuance of the warrant.' " *State v. Hundley*, 272 N.C. 491, 493, 158 S.E.2d 582, 583 (1968) (quoting *Underwood*, 244 N.C. at 69, 92 S.E.2d at 462). Thus, the critical date for purposes of determining whether the statute of limitations has run is the date upon which a defendant is properly charged with committing a criminal offense.

The obstruction of justice charge lodged against Defendant rested upon conduct in which he allegedly engaged on or about 25 February 2007. Had Defendant initially been charged with misdemeanor obstruction of justice, the necessary warrant or other charging instrument would have had to have been issued on or before 25 February 2009 in order to avoid the bar created by N.C. Gen. Stat. § 15-1. However, Defendant was initially indicted for felonious obstruction of justice, an offense for which there is no statute of limitations. As a result, the statute of limitations set out in N.C. Gen. Stat. § 15-1 has no application to the charge that was actually brought against Defendant.

Although Defendant does not contend that N.C. Gen. Stat. § 15-1 has any relevance to the felony with which he was initially charged, he does argue that, because he was indicted for felonious obstruction of justice more than two years after the date of the alleged offense, the trial court had no authority to submit the issue of his guilt of misdemeanor obstruction of justice to the jury despite the fact that it is a lesser included offense of felonious obstruction of justice. We do not find Defendant's logic persuasive.

" 'It is well settled that "a defendant is entitled to have all lesser degrees of offenses supported by the evidence submitted to the jury as possible alternative verdicts." ' " *State v. Millsaps*, 356 N.C. 556, 562, 572 S.E.2d 767, 772 (2002) (quoting *State v. Palmer*, 293 N.C. 633, 643-44, 239 S.E.2d 406, 413 (1977)). At bottom, Defendant is arguing that this rule is subject to an implicit exception, which is that a defendant is not entitled to submission of a lesser included offense which happens to be a misdemeanor unless he or she was indicted within two years of the alleged offense date. Defendant has not cited any authority in support of this position, and we know of none. Such a result would deprive certain defendants charged with committing felony offenses of the right to have the issue of lesser included misdemeanor offenses submitted for the jury's consideration despite the

fact that "the failure to so instruct constitutes reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense," *State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000) (citations omitted), *cert. denied*, 531 U.S. 1083, 148 L. Ed. 2d 684, 121 S. Ct. 789 (2001), a result we do not believe to be consistent with the General Assembly's intent. Thus, we conclude that the statute of limitations set out in N.C. Gen. Stat. § 15-1 does not control the submission of the issue of a defendant's guilt of a misdemeanor lesser included offense to the jury, provided that the greater offense was properly charged in a timely manner, so that Defendant's challenge to the trial court's decision to submit the issue of Defendant's guilt of misdemeanor obstruction of justice to the jury as a lesser included offense does not justify an award of appellate relief.[3]

### 3. Jury Instruction on "Lack of Legal Authority"

**[3]** Thirdly, Defendant argues that Judge Doughton erred by denying his motion for appropriate relief on the grounds that "the trial court failed to instruct the jury on the lack of legal authority to require the processing with which Defendant allegedly interfered." In support of this contention, Defendant asserts that

> [T]he lack of probable cause for Deputy Dombrowski to charge Dr. Senft and require him to submit to further processing was a substantial feature of the case and . . . the trial court had a duty to instruct on that substantial feature, even in the absence of a request from the defendant. . . . [I]t was error not to instruct the jury that it should find the defendant not guilty unless it was convinced beyond a reasonable doubt that Deputy Dombrowski had sufficient legal justification to process Dr. Senft for impaired driving. There is nothing illegal about obstructing the processing of an illegal arrest.

Once again, we conclude that this argument lacks merit.

First, we note that the evidentiary record would not support a finding that Sergeant Dombrowski lacked probable cause to arrest Dr. Senft for impaired driving and request him to submit to a chemical analysis of his breath. The uncontradicted record evidence tends to show that Sergeant Dombrowski and several other officers set up a traffic checkpoint in a well-lit area that was visible for some

---

3. In light of our resolution of this issue, we need not address Defendant's challenge to the State's acknowledgement that it was aware of the fact that the Lincoln County grand jury indicted Defendant for felonious obstruction of justice more than two years after 25 February 2009.

distance. The officers, who wore reflective vests, held flashlights and left their patrol car lights on, stopped each car as it arrived at the traffic checkpoint. Dr. Senft, however, drove through the checkpoint without stopping, which, despite Defendant's contention to the contrary, was a significant indicator of impairment. Sergeant Dombrowski spent a half hour in Dr. Senft's presence and noted that Dr. Senft admitted consuming several alcoholic beverages, had an odor of alcohol about his person, declined to take an Alco-Sensor test, and supported himself while getting out of his car. Although Dr. Senft testified that he had passed the sobriety tests that Sergeant Dombrowski administered and that Defendant also administered field sobriety tests, and although Defendant told Sergeant Dombrowski that Dr. Senft had an Alco-Sensor reading of .07, these facts would not support a finding that Sergeant Dombrowski lacked probable cause to arrest Dr. Senft at the time of the alleged impaired driving given the undisputed nature of Sergeant Dombrowski's testimony and the lapse of time between the observations made by Sergeant Dombrowski and those made by Defendant. As a result, assuming for purposes of discussion, without in any way deciding, that Defendant had the legal right to intervene in order to prevent further processing of Dr. Senft based on a conclusion that Sergeant Dombrowski lacked the probable cause needed to place Dr. Senft under arrest for impaired driving and request him to submit to a chemical analysis of his breath, the record does not contain sufficient evidence to permit a jury determination that Sergeant Dombrowski lacked the necessary probable cause,[4] obviating any need for an instruction of the sort contended for by Defendant. "A trial judge should not give instructions that are not supported by a reasonable view of the evidence." *State v. McQueen*, 324 N.C. 118, 142, 377 S.E.2d 38, 52 (1989) (citing *State v. Lampkins*, 283 N.C. 520, 196 S.E.2d 697 (1973)).

4. Admittedly, at least some of the evidence upon which Defendant relies in support of this argument would have been admissible at a trial of Dr. Senft had he ever been charged with impaired driving. However, that evidence addresses the issue of whether Dr. Senft was actually impaired rather than the issue of whether Sergeant Dombrowski had probable cause to arrest Dr. Senft, which is an entirely separate question. " 'Beyond a reasonable doubt' and 'probable cause' are two different standards applied at different stages of a criminal prosecution. To arrest petitioner, [the officer] needed probable cause to believe that he committed an implied offense. To convict petitioner of the charge of driving while impaired, the State was required to prove its case beyond a reasonable doubt[.]" *Gibson v. Faulkner*, 132 N.C. App. 728, 736, 515 S.E.2d 452, 456 (1999).

STATE v. TAYLOR

[212 N.C. App. 238 (2011)]

Furthermore, again assuming for purposes of discussion that the instruction which Defendant contends should have been given represents an accurate statement of North Carolina law, the record contains no indication that Defendant had any authority to or responsibility for evaluating and correcting the arrest decisions made by other deputies. The essential basis upon which the State proceeded against Defendant for obstruction of justice was that Defendant used his official position to interfere with the arrest and processing of a third person by another officer. In attempting to persuade us that the requested instruction should have been given, Defendant asserts that:

> In the exercise of its powers, the sheriff's department is of course bound by constitutional limitations on the exercise of authority over persons suspected of criminal activity. North Carolina recognizes the liability of a sheriff for false imprisonment and false arrest where a seizure is made without adequate justification, such as an arrest without probable cause. . . . In the absence of probable cause to charge Dr. Senft it would have been lawful for defendant to have acted as alleged.

As we understand this argument, Defendant appears to be suggesting that, if he believed that Sergeant Dombrowski lacked probable cause to arrest Dr. Senft for impaired driving, it would have been lawful for him to prevent Sergeant Dombrowski from completing the processing of Dr. Senft. The record developed at trial is, however, completely devoid of any evidence tending to show that Defendant had the responsibility for "un-arresting" Dr. Senft if, in Defendant's opinion, Sgt. Dombrowski had placed Dr. Senft under arrest without adequate justification. Thus, Defendant has failed to establish that he had any right or obligation to determine that a subordinate had arrested a suspect without possessing the requisite probable cause and to take corrective action, a fact that undercuts the validity of Defendant's argument. As a result, Defendant has failed to demonstrate that the record evidence would have supported the delivery of this instruction.

### 4. Plain Error

[4] Finally, Defendant argues that "[t]he submission of the time-barred misdemeanor and the failure to instruct on the lack of legal authority to require the processing with which Defendant allegedly interfered constituted plain error." In advancing this argument, Defendant essentially restates contentions that we addressed and rejected earlier in this opinion. However, instead of characterizing these arguments as a justification for overturning Judge Doughton's

decision to deny his motion for appropriate relief, he treats these issues as plain error occurring during the trial. As we have already concluded that neither the trial court's decision to submit the issue of Defendant's guilt of misdemeanor obstruction of justice to the jury nor its failure to instruct the jury concerning the sufficiency of Sergeant Dombrowski's justification for arresting Dr. Senft constituted error, we necessarily reject Defendant's argument that the trial court committed plain error as regards these issues.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that Defendant had a fair trial, free from prejudicial error, and that Judge Doughton did not err by denying Defendant's motion for appropriate relief. As a result, Defendant is not entitled to any relief on appeal from the trial court's judgment or Judge Doughton's order.

NO ERROR AT TRIAL; DENIAL OF MOTION FOR APPROPRIATE RELIEF AFFIRMED.

Judges BRYANT and BEASLEY concur.