**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-4509**

———————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

RODNEY LUCAS,

        Defendant – Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville. James C. Dever III, Chief District Judge. (4:11-cr-00071-D-1)

———————

Argued: September 20, 2013        Decided: October 18, 2013

———————

Before TRAXLER, Chief Judge, DIAZ, Circuit Judge, and Gina M. GROH, United States District Judge for the Northern District of West Virginia, sitting by designation.

———————

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Groh joined. Chief Judge Traxler wrote a separate opinion concurring in the result.

———————

**ARGUED:** Stephen Clayton Gordon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Joshua L. Rogers, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Judge:

Rodney Lucas appeals the 228-month prison sentence imposed by the district court following his guilty plea to being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924. On appeal, Lucas contends that the district court procedurally erred in applying a four-level enhancement under the U.S. Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(6)(B) because he did not possess a firearm in connection with another felony offense. He also argues that the sentence was substantively unreasonable. For the reasons that follow, we reject these arguments and affirm.

I.

A.

On October 13, 2009, a confidential informant told police in Washington, North Carolina that Lucas, a convicted felon, was gathered with several others near a Washington residence and was in possession of a firearm. When police officers arrived at the scene, Lucas fled on foot and ran into the home of Helen Guthrie. Once inside, Lucas hid a .357-magnum revolver in the freezer. The police followed Lucas into the house and found six rounds of .357-magnum ammunition on his person. After arresting Lucas, officers retrieved the firearm from the freezer.

3

The police later obtained and executed a warrant to search Lucas's house, where they found, inter alia, 35 rounds of hollow-point ammunition.

A grand jury charged Lucas in a two-count indictment with possessing a firearm (Count One) and ammunition (Count Two) after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1), 924. Lucas pleaded guilty to both counts without a plea agreement.

B.

The Presentence Investigation Report ("PSR") calculated Lucas's criminal history category at VI. It recommended an adjusted offense level of 21, reflecting a four-level enhancement pursuant to U.S.S.G. § 2K2.1, which applies when a defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B).

The government moved for an upward departure pursuant to U.S.S.G. § 4A1.3(a)(1), which authorizes an upward departure if the court believes the defendant's criminal history category "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Lucas objected, requesting

4

the court sentence him within the Guidelines range on both counts, to run concurrently or partially concurrently with an undischarged state sentence. He argued that a more lenient sentence was appropriate in light of his age[1] and the fact that his last probation violation was approximately five years earlier.

The district court determined that the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) was appropriate. It found that Lucas committed the felony common law offense of obstruction of justice when he hid the revolver in the freezer, and that his illegal possession of a firearm facilitated that offense. In the alternative, the court found that Lucas was guilty of a felony for breaking into Guthrie's home. The resultant offense level of 21, in combination with the applicable criminal history category of VI, yielded an advisory Guidelines range of 77 to 96 months in prison.

The sentencing court then departed upward pursuant to U.S.S.G. § 4A1.3(a)(4)(B). The court found that Lucas's extensive criminal record warranted a ten-level increase in the offense level, raising the total from 21 to 31. With the adjusted offense level, the advisory Guidelines range increased to 188 to 235 months.

---

[1] Lucas was forty-one years old at sentencing.

5

The court also concluded that consecutive sentences were appropriate under U.S.S.G. § 5G1.2(d). The court explained the need for a lengthy sentence in terms of Lucas's extensive criminal record:

> [T]his tale of the life of crime of Rodney Lucas began at age 17. Here we are 59 convictions later . . . .
> . . . .
> He has eight felony drug convictions, one felony assault by strangulation conviction, one habitual felon conviction. He's committed crimes, serious crimes, while on probation. He has committed crimes within months or even weeks of being released from prison.
> Nothing--nothing other than incarceration seems to slow down Rodney Lucas when it comes to being a criminal. He truly is a one man crime wave. It's who he is, it's what he does. And sadly . . . I think it's who [he will] always be.

J.A. 85-86.

The court imposed a 120-month sentence on Count One and a 108-month sentence on Count Two, to be served consecutively for a total term of 228 months. This appeal followed.

## II.

Our review of criminal sentences "is limited to determining whether they are 'reasonable.'" Gall v. United States, 552 U.S. 38, 46 (2007). Our first step is to ensure that the district court committed no significant procedural error, such as failing to properly calculate the advisory Guidelines range. United States v. Rivera-Santana, 668 F.3d 95, 100 (4th Cir.), cert.

6

denied, 133 S. Ct. 274 (2012). "In assessing a challenge to a sentencing court's application of the Guidelines, we review the court's factual findings for clear error and its legal conclusions de novo." United States v. Alvarado Perez, 609 F.3d 609, 612 (4th Cir. 2010) (internal quotation marks omitted).

"Absent a significant procedural error, our next step is to assess the substantive reasonableness of the sentence imposed." Rivera-Santana, 668 F.3d at 100. "In reviewing any sentence, whether inside, just outside, or significantly outside the Guidelines range, we apply a deferential abuse-of-discretion standard." United States v. Savillon-Matute, 636 F.3d 119, 122 (4th Cir. 2011) (internal quotation marks omitted).

III.

A.

1.

Lucas first claims that the district court procedurally erred by applying a four-level enhancement under U.S.S.G. § 2K2.1. He does not argue that obstruction of justice cannot constitute "another felony" for purposes of the enhancement.[2]

---

[2] "Obstruction of justice is a common law offense in North Carolina" and encompasses "any act which prevents, obstructs, impedes or hinders public or legal justice." In re Kivett, 309 S.E.2d 442, 462 (N.C. 1983) (internal quotation marks omitted). The offense is a felony if the conduct is "'infamous, done in (Continued)

7

Rather, he disputes whether a felon in possession's act of getting rid of the firearm can ever be "in connection with" a felony obstruction of justice within the meaning of § 2K2.1(b)(6)(B).

A party possesses a firearm "in connection with" another offense if the firearm "facilitated, or had the potential of facilitating" the other offense. U.S.S.G. § 2K2.1 cmt. n.14(A). A firearm satisfies this requirement when it had "some purpose or effect with respect to the other offense . . . including if the firearm was present for protection or to embolden the actor." United States v. Jenkins, 566 F.3d 160, 162 (4th Cir. 2009) (internal quotation marks and citation omitted). The requirement is not satisfied if the firearm is present by mere "accident or coincidence." United States v. Blount, 337 F.3d 404, 411 (4th Cir. 2003) (internal quotation marks omitted).

The district court concluded that possession of a firearm can facilitate obstruction of justice when the conduct underlying the obstruction consists of "ditching" the weapon to avoid detection by law enforcement. In the district court's

---

secrecy and malice, or with deceit and intent to defraud.'" State v. Taylor, 713 S.E.2d 82, 88 (N.C. Ct. App. 2011) (quoting N.C. Gen. Stat. § 14-3(b)). In this case, the district court found that Lucas hid the revolver with deceit and intent to defraud, i.e., to prevent the police from discovering his unlawful possession of a firearm.

view, when a felon possesses a firearm, it is the illegal presence of the weapon itself that motivates the felon to discard it. And without its illegal presence, the obstruction would not be possible. Cf. United States v. Nale, 101 F.3d 1000, 1004 (4th Cir. 1996) (finding the defendant possessed a gun in connection with a sexual assault because the offense "would not have been possible but for the weapon").

In sum, the district court found that "[t]he .357 revolver was the very subject of this obstruction of justice" and thus "facilitated the other offense." J.A. 70. We may reverse this finding only for clear error, which requires that we be "left with the definite and firm conviction that a mistake has been committed." United States v. Dugger, 485 F.3d 236, 239 (4th Cir. 2007) (internal quotation marks omitted). Although the evidence in the record did not compel the district court's finding, we cannot say the court's conclusions were implausible in light of the record as a whole. Under such circumstances, we do not disturb the district court's finding, even though we may well have weighed the evidence differently. See United States v. Hall, 664 F.3d 456, 467 (4th Cir. 2012); cf. United States v. Hampton, 628 F.3d 654, 663-64 (4th Cir. 2010) (affirming the district court's finding that the defendant's possession of a firearm, which he never exposed to officers, facilitated the

9

felony of assaulting a police officer while resisting arrest when it was a close call).[3]

2.

Lucas also argues that applying the enhancement to his conduct would contravene the purpose of U.S.S.G. § 2K2.1(b)(6)(B). We have previously recognized that the enhancement serves to "ensure that a defendant receives more severe punishment if, in addition to committing a firearms offense within the scope of § 2K2.1, he commits a separate felony offense that is rendered more dangerous by the presence of a firearm." Blount, 337 F.3d at 406. Lucas asserts that he rendered the firearm less dangerous by discarding it.

However, the relevant question is not whether Lucas rendered the firearm less dangerous by discarding it, but whether the other felony--obstruction of justice--became more dangerous as a result of his conduct. Had Lucas successfully concealed his unlawful possession from law enforcement by hiding the revolver and otherwise managed to elude the officers, he could have retrieved the weapon after the police departed. Moreover, leaving an unsecured firearm in someone's home without

---

[3] Because we find that the district court did not clearly err in finding that Lucas's act of discarding the gun facilitated a felony obstruction of justice, we do not address the district court's alternative finding that Lucas was guilty of breaking into Guthrie's house.

the homeowner's knowledge hardly renders the weapon less dangerous.

Nor are we persuaded by Lucas's argument that applying § 2K2.1(b)(6)(B) on these facts will expose nearly all § 922(g)(1) defendants to the enhancement. The fact that most felons in possession attempt to conceal evidence of their misconduct (even if true) should not immunize them from punishment. Moreover, district courts must make independent findings on all of the elements of obstruction of justice before applying the enhancement, dispelling any concern that the enhancement will apply to felons in possession as a matter of course. Cf. United States v. Dunningan, 507 U.S. 87, 96–97 (1993), abrogated on other grounds, United States v. Wells, 519 U.S. 482 (1997) (the fact that "the trial court must make findings to support all the elements of a perjury violation in the specific case" obviates the concern that courts will enhance sentences under U.S.S.G. § 3C1.1 for obstruction of justice as a matter of course).

In sum, we decline to set aside the district court's application of § 2K2.1(b)(6)(B) to these facts.[4]

---

[4] The district court also made clear its intent to impose "the exact same sentence on each of the[] counts" in light of the factors enumerated in 18 U.S.C. § 3553(a). J.A. 101. We find no abuse of discretion in the district court's alternative sentence. As a result, any error the district court may have
(Continued)

11

B.

Lucas also contends that his 228-month prison sentence is substantively unreasonable. Specifically, he objects to the district court's decision to upwardly depart under U.S.S.G. § 4A1.3 based on his criminal history. He argues that the district court improperly focused on the sheer number of past convictions without sufficiently considering the fact that many of those convictions were for motor vehicle offenses. He also claims that incarceration is an ineffective deterrent to recidivism, and he is an unlikely recidivist in any event because of his age.

When reviewing a departure under § 4A1.3, "we consider whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. McNeil, 598 F.3d 161, 166 (4th Cir. 2010) (internal quotation marks omitted).

At sentencing, the district court waded through Lucas's extensive criminal record and carefully recounted the severity

---

committed in imposing the § 2K2.1 enhancement was harmless. See Savillon-Matute, 636 F.3d at 123-24; see also United States v. Hargrove, 701 F.3d 156, 163 (4th Cir. 2012), cert. denied, 133 S. Ct. 2403 (2013) (rejecting a narrow application of assumed error harmless error review).

12

of his past convictions.  See J.A. 79-83.  It noted that Lucas had committed several violent offenses and underscored that his history "appears only to be getting worse."  Id. at 84. Additionally, the court considered Lucas's numerous parole violations, and noted that past efforts by the North Carolina criminal justice system to show Lucas leniency failed to stop him from engaging in criminal conduct.  It found that only a lengthy sentence would deter Lucas and protect the community. In these circumstances, the 228-month sentence is substantively reasonable.

IV.

For the reasons stated above, we affirm the sentence imposed by the district court.

AFFIRMED

13

TRAXLER, Chief Judge, concurring in the result:

I would affirm the sentence on the alternative basis given by the district court, namely that the § 2K2.1(b)(6)(B) enhancement was proper because Lucas committed felony breaking or entering when he entered Guthrie's home and because his possession of the firearm facilitated that felony. For a breaking or entering to be felonious under North Carolina law, the unprivileged entry must be made with the intent to commit another felony or larceny. See N.C.G.S. § 14-54(a); United States v. Carr, 592 F.3d 636, 644 (4th Cir. 2010). Lucas argues that the district court clearly erred to the extent that it found that Lucas entered Guthrie's residence with the intent to obstruct justice by hiding the gun there. I believe, however, that it was reasonable for the court to infer that Lucas, a felon, fled from the police because he did not want to be caught with the gun and that he entered Guthrie's home with the intent of hiding the gun.

Even assuming arguendo that the district court procedurally erred in applying the enhancement, however, I agree with my colleagues that any error was harmless. See ante at 11 n.4. The district court unequivocally stated that its choice of sentence did not depend on the correctness of the enhancement, and the court declared that it would select the very same sentence were we to hold that the enhancement did not apply.

14

Especially considering Lucas's truly awful pattern of recidivism, we have no reason whatsoever to doubt the district court on this point. Accordingly, so long as the alternative sentence was not an abuse of discretion, any error in applying the enhancement was harmless. See United States v. Savillon-Matute, 636 F.3d 119, 123 (4th Cir. 2011) (holding that when a district court gives an alternative, substantive basis for a sentence to account for the contingency that the district court has committed procedural error, the alternative sentence is reviewed for abuse of discretion, and if it is found to be reasonable, then any remaining, alleged procedural errors are presumed to be harmless); see also United States v. Hargrove, 701 F.3d 156, 162 (4th Cir. 2012) (rejecting the argument that Savillon-Matute should "be read narrowly to apply only under the unique circumstances of that case"), cert. denied, 133 S. Ct. 2403 (2013).

I do not believe that the alternative sentence constituted an abuse of discretion. The court discussed in great detail Lucas's criminal record of 59 convictions, which included many violent crimes. The court also noted that Lucas had violated his probation on several occasions and found that he was "exceptionally violent" and "a committed drug dealer" whose proclivity for crime had only increased over the years. J.A. 86. These observations were well founded and, if the

15

§ 2K2.1(b)(6)(B) enhancement did not apply, a significant upward departure under U.S.S.G. § 4A1.3 would have been justified in light of both the seriousness of Lucas's criminal history and the significant chance of his recidivism.

16