STATE OF NORTH CAROLINA
v.
KEVIN TEROD HOLLAND

No. COA12-1447

Filed 5 November 2013

1. **Constitutional Law—competency to stand trial—hearing not required**

The trial court did not err in a robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon case by failing to inquire, sua sponte, into defendant's competency after he was involuntarily committed to a psychiatric unit before the second day of his trial. The trial court had no record or information during trial that defendant was involuntarily committed. Further, defendant's distrust of counsel, decision to proceed to trial, mistaken understanding of criminal procedure, and refusal to attend his trial did not constitute substantial evidence requiring the trial court to conduct a hearing.

2. **Appeal and Error—motion for appropriate relief—no substantial evidence**

The trial court did not err in a robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon case by denying defendant's motion for appropriate relief (MAR). Even assuming arguendo that the challenged finding of fact was unsupported, defendant failed to show that the trial court erred in its ultimate conclusion to deny the MAR. There was not substantial

evidence requiring the trial court to conduct a hearing into defendant's competency.

Appeal by Defendant from judgment entered 1 June 2012 by Judge D. Jack Hooks in Superior Court, New Hanover County. Heard in the Court of Appeals 13 August 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Anne Goco Kirby, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Jon H. Hunt and Assistant Appellate Defender Benjamin Dowling-Sendor, for Defendant.*

McGEE, Judge.

Kevin Terod Holland ("Defendant") was convicted of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon on 1 June 2012. Defendant appeals from that conviction. Defendant subsequently filed a motion for appropriate relief ("MAR"), which the trial court denied in an order entered 3 May 2013. This Court granted Defendant's motion for supplemental briefing, by both parties, regarding the trial court's denial of Defendant's MAR.

## I. Appeal from Conviction

[1] Defendant's sole argument on appeal from his conviction is that the trial court erred by failing "to inquire, *sua sponte*, into his competency after he was involuntarily committed to a psychiatric unit before the second day of his trial." We disagree.

A "criminal defendant may not be tried unless he is competent. As a result, [a] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent." *State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007) (alteration in original) (internal quotation marks and citations omitted). "[T]he standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Id.* (internal quotation marks omitted).

In arguing that the trial court erred in failing to *sua sponte* conduct a competency hearing, Defendant points to evidence showing that: he

believed there was a conspiracy to rush him into court; he rejected the State's favorable offer to allow him to plead guilty to a Class I felony; he believed his attorney should file motions to dismiss "heard in anticipation/prior to trial[;]" and he believed his attorney conspired to get him convicted.

The key fact upon which Defendant relies is that he was involuntarily committed on or just before the second day of his trial. However, as Defendant acknowledges in his brief, the trial court had information indicating only that Defendant "<u>might have been</u> involuntarily committed." (emphasis added). The trial court had no record or information during trial that Defendant was involuntarily committed.

Defendant was in court for the first day of trial on 29 May 2012. When court resumed for the second day of trial on 30 May 2012, counsel for both the State and Defendant were present at 9:34 a.m., but Defendant was absent. Defendant's counsel was unable to reach Defendant by telephone. According to Defendant's counsel, Defendant was supposed to "show at 8:30[a.m.] in [Defendant's counsel's] office to talk" but Defendant did not appear. Defendant's counsel told the trial court that Defendant indicated on 29 May 2012 that "he had to go back to Greensboro, and [Defendant's counsel] suggested that [Defendant] not do that[.]" Defendant's counsel noted "an objection for the record" to the trial court's decision to proceed with trial without Defendant present in court.

The trial court, in its order denying Defendant's MAR, made the following relevant findings describing the remainder of Defendant's trial:

> Before proceeding further, [the trial court] gave a precautionary instruction to the jury regarding the State's burden of proof. The [trial court] also specifically instructed the jury about Defendant's absence, informing them to not form any negative inference therefrom.
>
> . . . .
>
> [Defendant's counsel] reported to the [trial court] that he had obtained some vague information about Defendant being in a hospital, in High Point, NC. It was unclear to [Defendant's counsel] who made the call to his office, but suspected it might have been from Defendant's aunt (at [Defendant's] mother's request).
>
> [Defendant's counsel] could not vouch for the accuracy of the message. He could not provide documentation

regarding the name of the hospital, the reason for the alleged hospitalization, or how long it might last. [Defendant's counsel] could not provide any information about how to contact Defendant, or provide information from anyone who could explain Defendant's absence.

. . . .

The State rested and Defendant offered no evidence. The evidence presented by the State was conclusive and overwhelming.

Despite Defendant's failure to appear, [Defendant's counsel] cross-examined the witnesses, participated in the charge conference, made appropriate motions, and delivered a closing argument.

At no time during the trial did the [trial court] have credible information as to Defendant's whereabouts.

At 2:56 p.m., as part of [the trial court's] general instructions to the jury [the trial court] again charged that Defendant's absence from trial was not to affect their consideration of the evidence, or to affect their duty to apply the law as given to them by the [trial court].

At approximately 4:40 p.m. (during jury deliberations), [Defendant's counsel] received information (from either Defendant's aunt or mother), which indicated that Defendant might have been involuntarily committed at Wesley Long Hospital, in Greensboro, NC.

The information was disclosed to the [trial court] and discussed while the jury was deliberating. The [trial court] stated on the record that Defendant "had potentially been involuntarily committed."

[Defendant's counsel] informed the [trial court] that he was still unable to obtain anything official from Defendant (or [Defendant's] relatives) about the purported hospitalization and that he was uncertain about the accuracy of the information.

Without having anything credible upon which to rely, [Defendant's counsel] chose not to make a motion to continue.

. . . .

> During the sentencing hearing, Defendant did not pro-
> vide (nor did anyone else) any documentation about
> [Defendant's] hospital admission. [Defendant] did not
> make any statements or offer any evidence about the rea-
> son for his hospitalization, about his purported involun-
> tary commitment, or his incapacity to proceed.

. . . .

> [Defendant's counsel] maintained he had no reason to
> believe anything was wrong with Defendant and thought
> Defendant's hospitalization was part of [Defendant's] plan
> to avoid prosecution.

The record shows that, on the second day of trial, the trial court had
no evidence of an involuntary commitment of Defendant. Evidence
Defendant produced at the MAR hearing showed that "Defendant was,
in fact, involuntarily committed at Wesley Long Hospital in Greensboro,
NC on the morning of May 30, 2012." However, this finding does not
diminish the fact that, on the second day of trial, the trial court had no
evidence of Defendant's involuntary commitment.

"Evidence of a defendant's irrational behavior, his demeanor at trial,
and any prior medical opinion on competence to stand trial are all rel-
evant" in determining whether the trial court should conduct a compe-
tency hearing. *State v. Staten*, 172 N.C. App. 673, 678, 616 S.E.2d 650,
655 (2005). "There are, of course, no fixed or immutable signs which
invariably indicate the need for further inquiry to determine fitness to
proceed; the question is often a difficult one in which a wide range of
manifestations and subtle nuances are implicated." *Id.* at 679, 616 S.E.2d
at 655.

In *Badgett*, the defendant pointed to evidence that he "wrote
numerous letters to the trial court and the district attorney express-
ing his desire for a speedy trial resulting in a death sentence[,]" "read
a statement to the jury during the penalty phase in which he impliedly
asked for a death sentence[,]" and "had an emotional outburst coupled
with verbal attacks on the assistant district attorney who delivered the
[S]tate's closing argument during the sentencing proceeding." *Badgett*,
361 N.C. at 259-60, 644 S.E.2d at 221. Our Supreme Court held that this
evidence did not constitute substantial evidence requiring the trial court
to *sua sponte* institute a competency hearing. *Id.* at 260, 644 S.E.2d
at 221.

Defendant cites *State v. Whitted*, 209 N.C. App. 522, 705 S.E.2d 787 (2011), in support of his argument. In *Whitted*, the evidence included the defendant's past history of mental illness; her rejection of a favorable plea offer; her emotional outburst after opening statements; her refusal to return to the courtroom; her loud chanting, singing, and "religious imprecations[;]" her refusal to "cooperate with trial proceedings[;]" and her further "singing, crying, screaming and mumbling as the trial court pronounced sentence." *Whitted*, 209 N.C. App. at 527-28, 705 S.E.2d at 791-92. In *Whitted*, this Court held that, in light of the defendant's "history of mental illness, including paranoid schizophrenia and bipolar disorder," the defendant's "remarks that her appointed counsel was working for the State and that the trial court wanted her to plead guilty, coupled with her irrational behavior in the courtroom, constituted substantial evidence" that required the trial court to conduct a competency hearing. *Id.* at 528, 705 S.E.2d at 792.

In the present case, the trial court had no information at the time of trial that Defendant had any history of mental illness. Defendant's behavior in the courtroom was not disruptive or irrational. Rather, Defendant's conduct and interactions with the trial court during the first day of trial on 29 May 2012 indicate that he was able to communicate clearly and "with a reasonable degree of rational understanding[.]" *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221. Relevant portions of the trial court's interactions with Defendant before trial follow:

> THE COURT: . . . . I have called Mr. Waters over and made inquiry in chambers as to whether he was representing you, and at that time he advised me that he is not representing you as to these charges, that he has had discussions with you, but has not been retained and cannot participate absent being paid. Are you aware of this?

> THE DEFENDANT: Yes, sir. I indicated to Mr. Lambeth that I was seeking to retain Mr. Waters.

> THE COURT: All right, sir. But that has not been accomplished at this point?

> THE DEFENDANT: No, sir. We were in discussions, Mr. Waters and I.

> THE COURT: Well, you do understand that the jury is here. They're not in the courtroom, but they're down in the jury room, and it's time for trial.

THE DEFENDANT: Yes, sir.

THE COURT: All right. Do you see Mr. Waters being retained in the next few moments and being ready?

THE DEFENDANT: As far as being ready for trial today, I don't, but being retained in the next few moments, yes, sir.

The trial court heard from the State regarding the attorneys that had withdrawn from representation of Defendant, and the trial court denied Defendant's motion to continue.

Although Defendant apparently disagreed with counsel, attempted to retain a different attorney, and failed to appear for the second day of trial, Defendant's actions do not constitute substantial evidence that Defendant was incompetent to stand trial. The transcript indicates Defendant had a rational and factual understanding of the proceedings. Allegations that Defendant may have been involuntarily committed in Guilford County, coupled with the fact that Defendant told his attorney that he planned to return to Greensboro, does not suggest incompetency. Rather, the evidence suggests that Defendant chose not to attend the second day of trial. This suggestion is bolstered by the representations of Defendant's counsel to the trial court. In its order denying Defendant's MAR, the trial court found as fact that "[Defendant's counsel] maintained he had no reason to believe anything was wrong with Defendant and thought Defendant's hospitalization was part of [Defendant's] plan to avoid prosecution."

Defendant's distrust of counsel, decision to proceed to trial, mistaken understanding of criminal procedure, and refusal to attend his trial do not constitute substantial evidence requiring the trial court to conduct a hearing into Defendant's competency to stand trial. The trial court did not err in failing to, *sua sponte*, hold a hearing on Defendant's competency to stand trial.

## II. Appeal from Denial of MAR

[2] Defendant's sole argument on appeal from the denial of his MAR is that the trial court erred because "the crucial finding of fact that [Defendant] had been diagnosed as 'malingering' and 'feigning illness' was not supported by any evidence, and the crucial conclusions of law rested on that finding." We disagree.

"When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse

of discretion. However, the trial court's conclusions [of law] are fully reviewable on appeal." *State v. Taylor*, 212 N.C. App. 238, 243, 713 S.E.2d 82, 86 (2011).

Defendant does not specify which finding he challenges on appeal. Rather, Defendant states that the "trial court made a finding of fact that Dr. Readling diagnosed [Defendant] as a malingerer. In the same finding, the trial court also found that the hospital records stated that [Defendant] was feigning his mental illness." We assume Defendant intended to challenge the finding which appears on page 8 of the trial court's order, as follows:

> Upon learning of Defendant's legal issues (and that law enforcement would be taking Defendant back to Wilmington), Dr. Read[l]ing changed his discharge diagnosis by adding "Malingering" to his original diagnosis. Cone Health Behavioral Health Hospital's coding record for Defendant's final diagnosis also included (among others) "person feigning illness."

Defendant contends that "[f]rom this unsupported finding, the trial court concluded the following about [Defendant's] competence to stand trial:"

> Defendant's failure to attend the second day of trial, his untruthfulness to the hospital admissions staff, his refusal to release admission information to court officials, his involuntary commitment diagnosis based on incomplete information, and the discharge diagnosis of "malingering" and "person feigning illness," was not substantial evidence indicating Defendant may have been mentally incompetent.
>
> Defendant faked and feigned his illness.
>
> Defendant has failed to carry his burden with credible evidence as to his incompetence to stand trial.
>
> Defendant was not entitled to a hearing on the issue of his competency whereby the [trial] court was required to conduct a thorough inquiry before it allowed Defendant's trial to proceed.

Even assuming *arguendo*, without deciding, that the challenged finding of fact was unsupported, Defendant fails to show that the trial court erred in its ultimate conclusion to deny Defendant's MAR. With the exception of the conclusion that "Defendant faked and feigned his illness[,]" the above conclusions are supported by other unchallenged findings of fact,

**STATE v. HOLLAND**

[230 N.C. App. 337 (2013)]

quoted in Section I of this opinion, and additional unchallenged findings, which are quoted below:

> Defendant was required to answer a number of questions and submit to an assessment before admission. When asked by admissions staff whether he had "any legal issues," "any criminal charges pending," or "any court dates," Defendant answered "No" to each. When the staff provided Defendant with a standard form entitled "*Consent to Release Information*," he refused to check the box that would give the staff permission to release information to "Law Enforcement, Probation, (or his) Attorney."
>
> . . . .
>
> Defendant was transferred to Cone Health Behavioral Health Hospital for admission and treatment. Defendant did not inform the staff at Cone that he was supposed to be in Wilmington in court for his armed robbery trial, or that he had "any legal issues."

The record demonstrates that there was not substantial evidence requiring the trial court to conduct a hearing into Defendant's competency. The trial court did not err in denying Defendant's MAR.

### III. Conclusion

Defendant has not shown error in either his conviction or the trial court's denial of his MAR. We note that, although Defendant refers to the right to be present at trial in his brief challenging the denial of his MAR, Defendant does not argue that the trial court deprived him of this right under the Confrontation Clause of either the Constitution of North Carolina or the United States Constitution. We therefore express no opinion as to that issue.

No error in part, affirmed in part.

Judges STEELMAN and ERVIN concur.