STATE OF NORTH CAROLINA v. DON TRAY COLE

No. COA10-139

(Filed 4 January 2011)

**1. Indictment and Information— variance in underlying felony offense—subject matter jurisdiction—notice— accessory after the fact**

The trial court had subject matter jurisdiction to try defendant and enter judgment against him for accessory after the fact to second-degree murder even though the indictment listed the charge as accessory after the fact to first-degree murder. The indictment provided defendant with adequate notice to prepare his defense and to protect him from double jeopardy. The elements of the underlying felony themselves were not essential elements of the crime of accessory after the fact.

**2. Accomplices and Accessories— accessory after the fact— second-degree murder—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of accessory after the fact to second-degree murder even though defendant contended there was insufficient evidence to show that he knew his nephew killed the victim. The totality of evidence gave rise to a reasonable inference for the jury to infer that defendant knew the close range shot was fatal.

**3. Accomplices and Accessories— accessory after the fact— armed robbery—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of accessory after the fact to armed robbery even though defendant contended there was insufficient evidence to show that an unlawful taking or attempt to take had occurred. Contrary to defendant's assertion, the robbery was complete once the stolen property was removed from the victim's possession instead of when defendant arrived at a place of safety.

**4. Appeal and Error— preservation of issues—failure to raise constitutional issue at trial**

Although defendant contended that the trial court violated his constitutional guarantee against double jeopardy by convicting

him of accessory after the fact to second-degree murder and armed robbery even though the two convictions were based on the same underlying facts, he failed to preserve this issue because he did not raise it at trial.

**5. Criminal Law— denial of requested jury instruction—not supported by evidence or law**

The trial court did not abuse its discretion in an accessory after the fact case by denying defendant's request to instruct the jury on "mere presence" and the meaning of "malice." The requested instructions were not supported by the evidence and were not appropriate under the law.

**6. Evidence— detective—opinion testimony—police investigative process—plain error analysis**

The trial court did not commit plain error in an accessory after the fact case by allegedly admitting improper opinion evidence from a detective. The testimony was rationally based on his perception and experience about police procedure. Further, the pertinent testimony was helpful to the fact finder to understand the investigative process.

**7. Evidence— prior crimes or bad acts—criminal record—plain error analysis**

The trial court did not commit plain error in an accessory after the fact case by admitting evidence referencing defendant's criminal record. Although the pertinent testimony was not admitted for one of the proper purposes under N.C.G.S. § 8C-1, Rule 404(b), it did not rise to the level of plain error since it was not offered to prove his character.

**8. Criminal Law— prosecutor's arguments—defendant's prior convictions—plain error analysis**

The trial court did not commit plain error in an accessory after the fact case by failing to intervene *ex mero motu* when the prosecutor referenced defendant's prior convictions during her closing statement. Viewed in the context in which they were made and in light of the overall factual circumstances to which they referred, the references did not so infect the trial that they rendered the conviction fundamentally unfair.

Judge JACKSON concurred in opinion prior to 31 December 2010.

Appeal by defendant from judgments entered 18 June 2009 by Judge J.B. Allen, Jr., in Durham County Superior Court. Heard in the Court of Appeals 2 September 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General R. Marcus Lodge, for the State.*

*Linda B. Weisel for defendant.*

ELMORE, Judge.

A jury found Don Tray Cole (defendant) guilty of accessory after the fact to second degree murder and accessory after the fact to robbery with a dangerous weapon. The trial court sentenced defendant to concurrent sentences of 107 to 138 months' imprisonment and thirty-four to forty-one months' imprisonment. Defendant now appeals. After careful consideration, we hold that defendant received a trial free from error.

## I. Background

During the evening of 10 June 2008, defendant and his nephew, Mark Stevens, drove to Liberty Street in Durham to purchase drugs. Defendant drove the vehicle, a Jeep, and Stevens rode in the front passenger seat. Stevens had a gun in the Jeep with him. According to Stevens, defendant knew that Stevens had the gun. Defendant and Stevens met the victim, Johnny Moore, Jr., in front of a house on Liberty Street to buy cocaine. Defendant backed the Jeep into the driveway of the house, and Stevens negotiated the sale with Moore while sitting in the Jeep. According to Stevens, while Moore was standing by the driver's side of the Jeep, Stevens pulled out his gun to scare Moore. Then Moore tried to smack the gun out of Stevens's hands, and the two men struggled over the gun. The gun went off while they were struggling. Stevens claimed that neither he nor defendant knew that Moore had been shot when they left the scene; Stevens did not see any blood, and Moore was still on his feet and able to run away from the vehicle.

A witness, Trindale Wilds, testified that he was smoking crack with Moore behind the house on Liberty Street when defendant and Stevens arrived. According to Wilds, Moore ran up to the Jeep, a scuffle ensued, the passenger fired a shot, and Moore ran away from the Jeep. Wilds did not see the bullet hit Moore, but he opined, "Close as

[Moore] was, [Stevons] couldn't miss. Close as he was." Wilds heard defendant say, "Why you shoot him, man? That's Boogie, man. Why you shoot him?" Wilds described defendant's reaction as genuine shock; "he didn't know it was going down like that, he really didn't." However, defendant did not drive off immediately. He "stopped for a little while and then drove off."

After being shot, Moore ran down the street and around the back of the house on Liberty Street, where he collapsed on the back porch and died. According to the medical examiner, Moore was shot in the chest, and the bullet exited through his back. The bullet perforated the thoracic aorta, both lungs, both diaphragms, and the stomach. The medical examiner explained that, after being shot, "Moore would have bled quickly into his chest cavity. Also as the chest cavity is filled with blood, he cannot breath[e] in, he cannot expand his lungs anymore, because now where there should be just space that the lungs can expand, they can't, they fill up with blood so he can't breathe." She opined that he "probably" would have been alive for another three to five minutes after being shot. "During this time, . . . he may have well been conscious and breathing, but, again, with . . . the blood filling the chest cavity, he wouldn't have been able to breath[e] for a long time."

Witnesses identified defendant and Stevons to police at the scene. Defendant was arrested that evening, but Stevons evaded capture for several weeks. Defendant cooperated with police during the investigation. Police testified that defendant said that he did not know that Stevons was going to shoot Moore or why Stevons shot Moore. He told police that, after the shooting, he drove to his father's house in Durham. Defendant stayed with his father and Stevons took off through the woods shortly before police arrived.

Stevons was charged with first degree murder and armed robbery, but he pled guilty to second degree murder and armed robbery. Defendant was indicted for first degree murder, robbery with a dangerous weapon, accessory after the fact to first degree murder, and accessory after the fact to robbery with a dangerous weapon. The State proceeded to trial on all four charges, but, at the close of all of the evidence, the trial court dismissed the murder and armed robbery charges. However, the trial court charged the jury with determining whether defendant was guilty of being an accessory after the fact to second degree murder, rather than first degree murder. The jury found defendant guilty of being both an accessory to second degree

murder and an accessory to robbery with a dangerous weapon. Defendant now appeals.

## II. Arguments

### A. Subject Matter Jurisdiction

**[1]** Defendant argues that the trial court lacked subject matter jurisdiction to try him and to enter judgment against him for accessory after the fact to second degree murder because the indictment listed the charge as accessory after the fact to first degree murder. We disagree.

The indictment, presumably drafted before Stevons pled guilty to second degree murder, contained the following relevant language:

The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above, the defendant named above unlawfully, willfully and feloniously did become an accessory after the fact to the felony of first degree Murder (GS 14-17) that was committed by Mark Stevons against Johnny Moore, in that the defendant knowing that Mark Stevons had committed a Murder in the first degree, did knowingly assist Mark Stevons in attempting to escape and in escaping detection, arrest, and punishment by driving Mark Stevons from the scene of the crime.

General Statutes section 15A-924 sets out the requirements for criminal pleadings. Among other things, an indictment must contain:

A plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation. When the pleading is a criminal summons, warrant for arrest, or magistrate's order, or statement of charges based thereon, both the statement of the crime and any information showing probable cause which was considered by the judicial official and which has been furnished to the defendant must be used in determining whether the pleading is sufficient to meet the foregoing requirement.

N.C. Gen. Stat. § 15A-924(a)(5) (2009). Our Supreme Court has summarized the rationale behind this rule as follows:

The purpose of such constitutional provisions is: (1) such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial[;] and (4) to enable the court, on conviction or plea of *nolo contendere* or guilty[,] to pronounce sentence according to the rights of the case.

*State v. Hunt*, 357 N.C. 257, 267, 582 S.E.2d 593, 600 (2003) (quotations and citation omitted; alterations in original).

We begin our analysis with the essential elements of accessory after the fact to second degree murder. The crime of accessory after the fact is codified in section 14-7 of our General Statutes:

If any person shall become an accessory after the fact to any felony, whether the same be a felony at common law or by virtue of any statute made, . . . such person shall be guilty of a crime, and may be indicted and convicted together with the principal felon, or after the conviction of the principal felon, or may be indicted and convicted for such crime whether the principal felon shall or shall not have been previously convicted, or shall or shall not be amenable to justice. . . . [A]n accessory after the fact to a Class A or Class B1 felony is a Class C felony, an accessory after the fact to a Class B2 felony is a Class D felony[.]

N.C. Gen. Stat. § 14-7 (2009). The elements of accessory after the fact are set out in the common law:

In order to prove a person was an accessory after the fact . . . three essential elements must be shown: (1) a felony was committed; (2) the accused knew that the person he received, relieved or assisted was the person who committed the felony; and (3) the accused rendered assistance to the felon personally.

*State v. Earnhardt*, 307 N.C. 62, 68, 296 S.E.2d 649, 653 (1982) (citations omitted).

Here, the indictment alleges that a felony was committed, that defendant knew that the person he assisted was the person who committed that felony, and that defendant rendered personal assistance to the felon. Without question, the felony identified in the indictment is first degree murder, not second degree murder, but the indictment nevertheless provided defendant with adequate notice to

prepare his defense and to protect him from double jeopardy. The elements of the underlying felony themselves are not essential elements of the crime of accessory after the fact, which is a distinct, substantive crime. *See State v. McIntosh*, 260 N.C. 749, 753, 133 S.E.2d 652, 655 (1963) ("The crime of accessory after the fact has its beginning after the principal offense has been committed. . . . A comparison of G.S. 14-5, defining accessory before the fact, and G.S. 14-7, accessory after the fact, clearly indicates the necessity of holding the latter is a substantive crime—not a lesser degree of the principal crime.") (citation omitted). We have held that an indictment for aiding and abetting the sale and delivery of cocaine was sufficient even when it did not name the person being aided and abetted. *State v. Poplin*, 56 N.C. App. 304, 309, 289 S.E.2d 124, 128 (1982). In *Poplin*, we explained that "the indictment asserted facts supporting every element of the criminal offense and the defendant's commission of it so that the defendant should have clearly been apprised of *the conduct* which was the subject of the accusation." *Id.* at 308-09, 289 S.E.2d at 128 (emphasis added). Here, defendant was clearly apprised of the conduct which was the subject of the accusation—that he rendered aid to Stevens after Stevens killed Moore. Accordingly, we hold that the variance in the indictment did not deprive the trial court of subject matter jurisdiction.

**B. Motion to Dismiss for Insufficient Evidence: Accessory After the Fact to Second Degree Murder**

[2] Defendant argues that the trial court erred by denying his motion to dismiss the charge of accessory after the fact to second degree murder because the State did not present sufficient evidence to show that defendant knew that Stevens had killed Moore. We disagree.

> Our review of the trial court's denial of a motion to dismiss is well understood. [W]here the sufficiency of the evidence . . . is challenged, we consider the evidence in the light most favorable to the State, with all favorable inferences. We disregard defendant's evidence except to the extent it favors or clarifies the State's case. When a defendant moves for dismissal, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion.

*State v. Hinkle*, 189 N.C. App. 762, 766, 659 S.E.2d 34, 36-37 (2008) (quotations and citation omitted; alteration in original). As set out in the previous section, the elements of accessory after the fact are: "(1) a felony was committed; (2) the accused knew that the person he received, relieved or assisted was the person who committed the felony; and (3) the accused rendered assistance to the felon personally." *Earnhardt*, 307 N.C. at 68, 296 S.E.2d at 653 (citations omitted).

Defendant argues that he rendered assistance to Stevons "*after* [Moore] had been mortally wounded, but *before* [Moore] died," and, therefore, defendant did not know that Stevons had committed a felony because the felony was not complete until after defendant drove Stevons away from the scene of the crime. We agree that the evidence is undisputed that Moore ran away from defendant's vehicle after he was shot and that defendant did not see Moore die. However, if "the totality of the evidence . . . is such to give rise to a *reasonable inference* that defendant knew precisely what had taken place," then there is sufficient evidence of the knowledge element to survive a motion to dismiss for insufficient evidence. *Id.* Here, defendant knew that Stevons had shot Moore at close range; a jury could reasonably infer that defendant knew that the shot was fatal. Accordingly, we hold that the trial court did not err by denying defendant's motion to dismiss.

## C. Motion to Dismiss for Insufficient Evidence: Accessory After the Fact to Armed Robbery

[3] Defendant argues that the trial court erred by denying his motion to dismiss the charge of accessory after the fact to armed robbery because (1) there was insufficient evidence to show that defendant knew that Stevons had committed a robbery and (2) there was insufficient evidence to show that the robbery had been completed when defendant rendered aid to Stevons. We disagree.

The essential elements of armed robbery are:

> (1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened. Force or intimidation occasioned by the use or threatened use of firearms, is the main element of the offense.

*State v. Small*, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991) (quotations and citations omitted).

Defendant argues that there was sufficient evidence to show that an unlawful taking or attempt to take occurred. The State played a DVD of one of Stevons's interrogations, and in that DVD, Stevons said that defendant wanted to go to Liberty Street to get some crack, but he did not want to pay for it. Although Stevons testified at trial that no robbery occurred, such equivocation goes to the weight of the evidence, which is a matter for the jury. In addition, there was no crack or money present on Moore's body, from which a jury could reasonably infer that Stevons kept the crack but did not pay for it.

Defendant argues that the robbery was not complete until he arrived at "a place of safety," his father's house, and thus he did not render any aid to Stevons after the robbery was complete. Defendant cites no North Carolina authority to support this proposition, relying instead on a California case, *People v. Cooper*, 811 P.2d 742 (1991). However, in North Carolina, the taking in a robbery is complete once "the thief succeeds in removing the stolen property from the victim's possession." *State v. Sumpter*, 318 N.C. 102, 111, 347 S.E.2d 396, 401 (1986). Accordingly, defendant's argument is without merit.

**D. Double Jeopardy**

[4] Defendant next argues that his constitutional guarantee against double jeopardy was violated when he was convicted of accessory after the fact to second degree murder and accessory after the fact to armed robbery because the two convictions were based on the same underlying facts. However, defendant did not raise this issue at trial, and he cannot raise it now for the first time on appeal. *See State v. Mason*, 174 N.C. App. 206, 208, 620 S.E.2d 285, 286-87 (2005) ("[D]ouble jeopardy protection may not be raised on appeal unless the defense and the facts underlying it are brought first to the attention of the trial court.") (quotations and citation omitted). Accordingly, we do not review it.

**E. Jury Instructions**

[5] Defendant next argues that the trial court erred by denying his request to instruct the jury on "mere presence" and the meaning of "malice." We hold that the trial court properly denied defendant's requests for these instructions.

"The choice of jury instructions rests within the trial court's discretion and will not be overturned absent a showing of abuse of discretion." *State v. Parker*, 187 N.C. App. 131, 137, 653 S.E.2d 6, 9 (2007) (quotations and citation omitted). "It is well established that

STATE v. COLE

[209 N.C. App. 84 (2011)]

when a defendant requests an instruction which is supported by the evidence and is a correct statement of the law, the trial court must give the instruction, at least in substance." *State v. Garner*, 340 N.C. 573, 594, 459 S.E.2d 718, 729 (1995) (citations omitted). Here, however, the instructions were not supported by the evidence, nor were they appropriate under the law, so the trial court properly denied defendant's requests to give them.

With respect to mere presence, the rule in question is "firmly established law: Mere presence at the scene of a crime does not make one guilty as a principal or as an aider and abettor or as an accessory before the fact." *State v. Haywood*, 295 N.C. 709, 717-18, 249 S.E.2d 429, 434 (1978) (quotations and citations omitted). Here, defendant was charged with accessory *after* the fact, not with aiding and abetting or accessory before the fact. Thus, his actions during the commission of the underlying crimes were not relevant to the jury's determination of defendant's actions *after* Stevons committed the robbery and murder. The trial court properly denied defendant's request for the instruction.

With respect to malice, defendant argues that the trial court erred by failing to define "malice," an element of second degree murder. The trial court announced that he would give the pattern jury instructions for accessory after the fact (N.C.P.I.—Crim. 202.40), and neither party objected. The trial court did follow the pattern jury instructions, which instruct trial judges to fill in certain blanks. The portion that defendant argues was improper is set out as follows in the pattern instructions: "First,. that (*name crime*) was committed by another person. (*Set forth elements of the crime*)." The trial court, following the pattern instructions, instructed the jury as follows:

First, that the crime of second degree murder was committed by another person. second degree murder is the unlawful killing of a human being with malice. And I will define the elements of that crime here and now.

First, that the defendant wounded the victim with a deadly weapon. Second, that the defendant acted intentionally and with malice. And third, that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred.

Defendant argues that the trial court's failure to further define "malice" was reversible error.

Defendant did not object to the instructions, though "when the instruction actually given by the trial court varied from the pattern language," and the trial court agreed to give the pattern instruction, "defendant was not required to object in order to preserve this question for appellate review." *State v. Jaynes*, 353 N.C. 534, 556, 549 S.E.2d 179, 196 (2001) (citation omitted). Here, however, it appears that the trial court did follow the pattern instructions. The instructions direct the trial court to "[s]et forth elements of the crime," and the trial court set forth the elements of the crime. The instructions do not state that a trial court must define every element of the crime or read the pattern jury instruction for the crime, as defendant suggests but provides no authority to support. Accordingly, we hold that this issue was not preserved, and we do not review it further.

## F. Evidentiary Matters

[6] Defendant argues that the trial court erred by admitting improper opinion and character evidence. We disagree.

First, defendant argues that the trial court improperly allowed a detective to give a legal opinion. The testimony in question is as follows:

Q. And what type of case, after your initial evaluation on the scene, what were you looking at?

A. A homicide that resulted from a robbery.

Q. And was your team able to speak to a number of witnesses there at the scene?

A. Yes.

Defendant did not object to the testimony, but he does assert that admitting the statement was plain error. "In criminal cases, a question which was not preserved by objection noted at trial . . . may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(c)(4) (2008). "Plain error is error 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.'" *State v. Leyva*, 181 N.C. App. 491, 499, 640 S.E.2d 394, 399 (2007) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987)).

However, we find no plain error here. The detective was testifying about police procedure, not giving a legal conclusion as

defendant asserts. *See State v. O'Hanlan*, 153 N.C. App. 546, 562-63, 570 S.E.2d 751, 761-72 (2002) ("The context in which this testimony was given makes it clear [the investigator] was not offering his opinion that the victim had been assaulted, kidnapped, and raped by defendant, but was explaining why he did not pursue as much scientific testing of physical evidence in this case as he would a murder case because the victim in this case survived and was able to identify her assailant. His testimony was rationally based on his perception and experience as a detective investigating an assault, kidnapping, and rape. His testimony was helpful to the fact-finder in presenting a clear understanding of his investigative process.").

[7] Next, defendant argues that it was plain error for the trial court to allow various witnesses to reference defendant's criminal record. Defendant specifically points to (1) disclosures made during the police interrogation DVD, which was admitted into evidence and shown to the jury, and (2) Stevons's testimony that he had "[b]een knowing [defendant] ever since he came home from prison." Defendant argues that this evidence was inadmissible under Rule 404(b) of our Rules of Evidence.

Rule 404(b) allows a witness to testify about a defendant's prior bad acts in limited circumstances:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2009).

We agree that the questioned testimony was not admitted for one of the proper purposes specified by Rule 404(b), but the admission of the testimony does not rise to the level of plain error. The evidence was not offered to prove defendant's character in order to show that he acted in conformity with that character; the context shows that the evidence was not elicited by the prosecution, but, instead, the evidence simply emerged as part of the witnesses' narrative. Without an objection, neither the trial court nor the jury had any reason to focus on the information, and the likelihood of any resulting prejudice was minimal. Accordingly, we hold that it was not plain error for the trial court to admit this evidence.

[8] Defendant also argues that it was plain error for the trial court not to intervene *ex mero motu* when the prosecutor referred to the above-referenced testimony during her closing statement.

> Where, as here, defendant failed to object to any of the closing remarks of which he now complains, he must show that the remarks were so grossly improper that the trial court erred by failing to intervene *ex mero motu*. In order to carry this burden, defendant must show that the prosecutor's comments so infected the trial that they rendered his conviction fundamentally unfair. Moreover, the comments must be viewed in the context in which they were made and in light of the overall factual circumstances to which they referred.

*State v. Call*, 349 N.C. 382, 419-20, 508 S.E.2d 496, 519 (1998) (citations omitted). Viewed in the context in which they were made, and in light of the overall factual circumstances to which they referred, the prosecutor's references to defendant's prior convictions did not so infect the trial that they rendered the conviction fundamentally unfair. Accordingly, we find no plain error.

### III. Conclusion

We hold that defendant received a trial free from error.

No error.

Judges JACKSON and STEPHENS concur.

Judge JACKSON concurred in this opinion prior to 31 December 2010.