IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-495

Filed: 7 July 2020

Cleveland County, Nos. 15 CRS 55334, 55249

STATE OF NORTH CAROLINA

v.

CANDACE JANE CRUZ

Appeal by defendant from judgment entered 29 June 2018 by Judge Lisa C. Bell in Cleveland County Superior Court. Heard in the Court of Appeals 4 March 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Milind K. Dongre, for the State.*

*Van Camp & Van O'Linda, PLLC, by James R. Van Camp, for defendant-appellant.*

ZACHARY, Judge.

Defendant Candace Jane Cruz appeals from the trial court's judgment entered upon a jury's verdicts finding her guilty of accessory after the fact and felony common-law obstruction of justice. After careful review, we conclude that Defendant received a fair trial, free from error.

**Background**

On the night of 24 November 2015, Quavios Clyde shot and killed Shawn Borders in Shelby, North Carolina. Subsequently, Clyde contacted Defendant, and

she picked Clyde up and drove him from Shelby to Forest City, North Carolina, to the home of his brother, Johntae Littlejohn. Defendant drove Clyde back to Shelby later that night.

Meanwhile, Detective Cameron Stroup with the Cleveland County Sheriff's Office investigated the crime scene, and concluded that Clyde was the perpetrator. While law enforcement personnel searched for Clyde, a crime analyst with the Cleveland County Sheriff's Office began "pinging" the locations of Clyde's cell phone. After the analyst tracked Clyde's phone to Littlejohn's residence, Detective Stroup and several other deputies traveled to the Forest City home. Upon their arrival, Littlejohn reported that Clyde was not there, but had been earlier that night, accompanied by "a white female in an SUV." Littlejohn consented to a search of his home. When the detectives did not find Clyde at Littlejohn's residence, Detective Stroup visited Defendant's home in Shelby.

Detective Stroup spoke with Defendant at her residence after midnight on 25 November 2015. Defendant permitted law enforcement officers to search her home for Clyde. Detective Stroup asked Defendant if she had seen Clyde, and Defendant replied that earlier that night, she had driven Clyde from Shelby to Forest City and back. Detective Stroup then informed Defendant that Clyde "was wanted for the homicide of [Borders] that occurred earlier that evening" and that a warrant had been issued for his arrest. When asked whether she knew about Clyde's involvement in

the fatal shooting, Defendant told Detective Stroup that she had no knowledge of the incident.

At around 8:00 a.m. later that morning, Defendant drove Clyde from Shelby to Lincolnton, North Carolina. Meanwhile, Detective Jordan Bowen with the Cleveland County Sheriff's Office tracked Clyde's cell phone to a location in Shelby, and a group of officers traveled there to investigate.

At approximately 10:00 a.m., Detective Bowen received information that a woman driving a gold Cadillac SUV had allegedly transported Clyde to Forest City and back following the shooting. While the other officers "knock[ed] on doors," Detectives Bowen and Jason Suludak drove around the area until they spotted a car matching the description from the tip. Defendant was sitting in the driver's seat.

At 11:41 a.m., Detectives Stroup, Bowen, and Suludak approached Defendant in her vehicle. Defendant told the detectives that she had not seen Clyde that morning, nor had she called, texted, or spoken to him since the night before. Detective Bowen requested Defendant's permission to view her cell phone's call and text message histories in order to verify her story. But Defendant was "very hesitant" to relinquish her phone, and she told Detective Bowen that she could not comply with his request because her phone "was off and it was dead." However, Detective Bowen observed Defendant "deleting things" from her phone during their conversation. After Detective Bowen's conversation with Defendant, Detective Stroup requested,

and the State obtained, a magistrate's order charging Defendant with felony common-law obstruction of justice for "withholding information from law enforcement in reference to a hom[i]cide investigation."

After obtaining the magistrate's order, Detective Stroup returned to the area where Clyde's cell phone last "pinged." Detective Stroup and other deputies were handing out Crime Stoppers "business cards" with information for individuals with knowledge of Clyde's whereabouts. When they saw Defendant drive by, Detectives Stroup and Suludak got into their patrol vehicles and prepared to initiate a stop of Defendant's vehicle. Detective Suludak stopped Defendant's vehicle at 3:35 p.m. After Detective Suludak pulled Defendant over, Detective Stroup arrested Defendant pursuant to the magistrate's order, and transported her to the Law Enforcement Center to interview her.

During the interview, Defendant waived her *Miranda* rights. Defendant told Detective Bowen that she had deleted some phone calls from her call history during their conversation earlier that morning. She further admitted that she had not been truthful when she told the detectives that she had not seen Clyde that day. Defendant told Detective Bowen that in reality, she had driven Clyde from Shelby to Forest City and back the previous evening, and again that morning from Shelby to Lincolnton. Defendant also consented to a "forensic download" of her cell phone, thereby providing law enforcement personnel full access to the device's contents.

Following the interview, Defendant was processed and released on an unsecured bond.

On 28 November 2015, Clyde turned himself in to the sheriff's office, where he was charged with first-degree murder and possession of a firearm by a felon. Clyde was subsequently tried by a jury in a separate proceeding and was convicted of second-degree murder and possession of a firearm by a felon.

On 11 April 2016, Defendant was indicted for (i) accessory after the fact to a felony, and (ii) felony common-law obstruction of justice. On 25 June 2018, Defendant's case came on for trial before the Honorable Lisa C. Bell in Cleveland County Superior Court. On 27 June 2018, a jury found Defendant guilty of both charges. On 29 June 2018, the trial court consolidated the offenses for judgment, and imposed a mitigated sentence of 50 to 72 months in the custody of the North Carolina Division of Adult Correction.[1]

Defendant timely filed written notice of appeal.

**Discussion**

On appeal, Defendant makes three distinct arguments challenging the trial court's instructions to the jury. We address each in turn.

---

[1] At sentencing, the trial court found two mitigating factors: Defendant supports her family and has a support system in the community. The trial court found no aggravating factors, and thus, concluded that a sentence within the mitigated range was appropriate.

Defendant initially contends that the trial court committed plain error by instructing the jury on both the offense of accessory after the fact and the offense of obstruction of justice. For the reasons set forth below, we disagree.

## I. Standard of Review

This Court reviews a challenge to a trial court's decision regarding jury instructions de novo, and we review "the jury instructions in their entirety when determining if there was error." *State v. Wirt*, __ N.C. App. __, __, 822 S.E.2d 668, 673 (2018) (citation omitted).

> The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*Id.* (citation omitted).

Here, however, Defendant failed to advance her arguments regarding the jury charge before the trial court although she had several opportunities to do so. Accordingly, she "specifically and distinctly" requests that we review for plain error. N.C.R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when

the judicial action questioned is specifically and distinctly contended to amount to plain error.").

Unpreserved issues may be reviewed for plain error "when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996).

> The plain error rule is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (citation and internal quotation marks omitted). Moreover, "[u]nder the plain error rule, [the] defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

## II. Analysis

Defendant first argues that the trial court committed plain error by instructing the jury on both obstruction of justice and accessory after the fact because the

enactment of N.C. Gen. Stat. § 14-7, codifying the offense of accessory after the fact, partially abrogated the common-law offense of obstruction of justice with regard to the conduct at issue in this case—specifically, "withholding information from law enforcement and assisting a defendant to leave the scene of an offense." Our Supreme Court has previously addressed—and rejected—this very argument.

As our Supreme Court has explained, "[o]bstruction of justice is a common law offense in North Carolina[,]" and "Article 30 of Chapter 14 of the General Statutes *does not abrogate this offense*." *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983) (emphasis added). "Article 30 sets forth specific crimes under the heading of Obstructing Justice. There is no indication that the legislature intended Article 30 to encompass *all aspects* of obstruction of justice." *State v. Taylor*, 212 N.C. App. 238, 245, 713 S.E.2d 82, 87-88 (emphasis added) (citation omitted), *disc. review denied*, 365 N.C. 342, 717 S.E.2d 558 (2011). Accordingly, Defendant's first argument lacks merit.

Defendant next argues that the trial court committed plain error by instructing the jury that obstruction of justice and accessory after the fact are separate offenses, rather than greater- and lesser-included offenses, because they constitute the same offense for purposes of the Fifth Amendment's prohibition against double jeopardy. As with her first argument, Defendant's second argument is foreclosed by our existing jurisprudence.

This Court has expressly held that accessory after the fact and obstruction of justice do not constitute the same offense, and that neither is a lesser-included offense of the other. *See State v. Cousin*, 233 N.C. App. 523, 537, 757 S.E.2d 332, 343, *disc. review denied*, 367 N.C. 521, 762 S.E.2d 446 (2014). Indeed, as Defendant explicitly acknowledges, these two offenses have different elements. For example, unlike accessory after the fact, the offense of obstruction of justice "requires deceit and intent to defraud." *Id.* On the other hand, the offense of accessory after the fact "requires that the defendant personally assisted the principal who committed the crime in escaping detection, arrest, or punishment." *Id.* Therefore, "[*t*]*he two offenses are distinct, and neither is a lesser*[-]*included offense of the other*." *Id.* (emphasis added).

In the instant case, the State presented substantial evidence to support each essential element of both of the charged offenses. At trial, the State elicited testimony from Detectives Stroup and Bowen that ultimately supported the instruction on the charge of obstruction of justice. Detectives Stroup and Bowen explained that when they approached Defendant in her vehicle, she told them that she had not seen Clyde that morning, nor had she called, texted, or spoken to him since the night before. Detective Bowen noted that during the same conversation, he requested Defendant's permission to view her cell phone's call and text message histories in order to verify her story, but Defendant told him that she could not comply with his request because her phone "was off and it was dead." However, Detective Bowen testified that he had

observed Defendant "deleting things" from her phone during their conversation, which Defendant confirmed during her interview with detectives later that day, after waiving her *Miranda* rights. Defendant's actions support the element of deceit and intent to defraud, as required for an obstruction of justice conviction. As such, the trial court did not err by instructing the jury on the offense of obstruction of justice.

The State also presented evidence to support the instruction on the charge of accessory after the fact: that Defendant knew that Clyde shot and killed Borders, and that Defendant personally rendered assistance to Clyde. *See State v. Cole*, 209 N.C. App. 84, 91, 703 S.E.2d 842, 847 (setting forth the three elements of the charge of accessory after the fact), *disc. review denied*, 365 N.C. 197, 709 S.E.2d 922 (2011).

Detective Stroup testified that when he initially spoke with Defendant after midnight on 25 November 2015, he told her that Clyde "was wanted for the homicide of [Borders] that occurred earlier that evening" and that a warrant had been issued for his arrest. The State's evidence therefore demonstrated that when Defendant drove Clyde from Shelby to Lincolnton in the morning of 25 November 2015, she knew that there was an outstanding warrant for his arrest. Indeed, during her interview at the Law Enforcement Center, Defendant admitted that she had not been truthful when she told Detectives Bowen and Suludak that she had not seen Clyde that day. Moreover, Defendant told detectives that she did not know where Clyde was, despite having been in contact with him and having driven him multiple times. She also

admitted that she had deleted evidence from her phone that would have alerted detectives to communications from Clyde. Taken together, this evidence supports the State's contention that although Defendant was aware that Clyde was wanted for murder in the shooting death of Borders, she nevertheless personally assisted Clyde in escaping detection, arrest, or punishment, as required for an accessory after the fact conviction. As such, a jury instruction on the charge of accessory after the fact was proper.

For these reasons, we conclude that the trial court did not err by instructing the jury on both the offenses of accessory after the fact and obstruction of justice.

Finally, Defendant argues that the trial court committed plain error by failing to instruct the jury that, if it found that Defendant "reasonably believed that [Clyde] killed [Borders] in self-defense, at the time she transported Clyde," then "the verdict on the accessory after the fact charge must be 'not guilty.' " Specifically, Defendant maintains that the trial court should have instructed the jury that "the fact that . . . Defendant knew [Clyde] shot and killed [Borders] on the night of the incident does not necessarily mean that, at the time [she] drove [Clyde] to Lincolnton and Forest City, she *knew* [Clyde] had *committed murder*." We disagree.

Clyde was convicted of second-degree murder in a separate proceeding. Yet, through her argument, Defendant implicitly asks this Court to reassess Clyde's self-

defense claim, which was already litigated and rejected by the jury during his trial, and thus has no bearing upon our decision in the instant case.

The elements of accessory after the fact are as follows: "(1) a felony was committed; (2) the accused knew that the person he received, relieved or assisted was the person who committed the felony; and (3) the accused rendered assistance to the felon personally." *Id.* (citation omitted). "[I]f the totality of the evidence is such to give rise to a *reasonable inference* that [the] defendant knew precisely what had taken place, then there is sufficient evidence of the knowledge element[.]" *Id.* (citation and internal quotation marks omitted).

Here, even assuming *arguendo*, that Defendant believed that Clyde killed Borders in self-defense at the time that she drove him from Shelby to Forest City and back on the night of the shooting, Defendant fails to explain her actions the following day, when she was indisputably on notice that Defendant was wanted for murder. Indeed, Detective Stroup testified that when he first arrived at Defendant's home after midnight on 25 November 2015, he asked Defendant if she was aware that Clyde "had recently shot and killed someone[,]" and he told her that there was an outstanding warrant for Clyde's arrest. Notwithstanding this information, later that morning, Defendant drove Clyde from Shelby to Lincolnton. Shortly thereafter, however, Defendant told detectives that she did not know where Clyde was, she had not been in contact with him since the night before, and she deleted evidence to the

contrary from her phone. This evidence "give[s] rise to a reasonable inference that [D]efendant knew precisely what had taken place," *id.* (citation and italics omitted), and that she personally assisted Clyde "in escaping detection, arrest, or punishment[,]" *Cousin*, 233 N.C. App. at 537, 757 S.E.2d at 343.

## Conclusion

For the reasons stated herein, the trial court did not err—let alone plainly err—in its jury instructions on the offenses of felony common-law obstruction of justice and accessory after the fact to a felony. Accordingly, we conclude that Defendant received a fair trial, free from error.

NO ERROR.

Judges DILLON and HAMPSON concur.