IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-495

 Filed: 7 July 2020

Cleveland County, Nos. 15 CRS 55334, 55249

STATE OF NORTH CAROLINA

 v.

CANDACE JANE CRUZ

 Appeal by defendant from judgment entered 29 June 2018 by Judge Lisa C.

Bell in Cleveland County Superior Court. Heard in the Court of Appeals 4 March

2020.

 Attorney General Joshua H. Stein, by Assistant Attorney General Milind K.
 Dongre, for the State.

 Van Camp & Van O’Linda, PLLC, by James R. Van Camp, for defendant-
 appellant.

 ZACHARY, Judge.

 Defendant Candace Jane Cruz appeals from the trial court’s judgment entered

upon a jury’s verdicts finding her guilty of accessory after the fact and felony common-

law obstruction of justice. After careful review, we conclude that Defendant received

a fair trial, free from error.

 Background

 On the night of 24 November 2015, Quavios Clyde shot and killed Shawn

Borders in Shelby, North Carolina. Subsequently, Clyde contacted Defendant, and
 STATE V. CRUZ

 Opinion of the Court

she picked Clyde up and drove him from Shelby to Forest City, North Carolina, to the

home of his brother, Johntae Littlejohn. Defendant drove Clyde back to Shelby later

that night.

 Meanwhile, Detective Cameron Stroup with the Cleveland County Sheriff’s

Office investigated the crime scene, and concluded that Clyde was the perpetrator.

While law enforcement personnel searched for Clyde, a crime analyst with the

Cleveland County Sheriff’s Office began “pinging” the locations of Clyde’s cell phone.

After the analyst tracked Clyde’s phone to Littlejohn’s residence, Detective Stroup

and several other deputies traveled to the Forest City home. Upon their arrival,

Littlejohn reported that Clyde was not there, but had been earlier that night,

accompanied by “a white female in an SUV.” Littlejohn consented to a search of his

home. When the detectives did not find Clyde at Littlejohn’s residence, Detective

Stroup visited Defendant’s home in Shelby.

 Detective Stroup spoke with Defendant at her residence after midnight on 25

November 2015. Defendant permitted law enforcement officers to search her home

for Clyde. Detective Stroup asked Defendant if she had seen Clyde, and Defendant

replied that earlier that night, she had driven Clyde from Shelby to Forest City and

back. Detective Stroup then informed Defendant that Clyde “was wanted for the

homicide of [Borders] that occurred earlier that evening” and that a warrant had been

issued for his arrest. When asked whether she knew about Clyde’s involvement in

 -2-
 STATE V. CRUZ

 Opinion of the Court

the fatal shooting, Defendant told Detective Stroup that she had no knowledge of the

incident.

 At around 8:00 a.m. later that morning, Defendant drove Clyde from Shelby to

Lincolnton, North Carolina. Meanwhile, Detective Jordan Bowen with the Cleveland

County Sheriff’s Office tracked Clyde’s cell phone to a location in Shelby, and a group

of officers traveled there to investigate.

 At approximately 10:00 a.m., Detective Bowen received information that a

woman driving a gold Cadillac SUV had allegedly transported Clyde to Forest City

and back following the shooting. While the other officers “knock[ed] on doors,”

Detectives Bowen and Jason Suludak drove around the area until they spotted a car

matching the description from the tip. Defendant was sitting in the driver’s seat.

 At 11:41 a.m., Detectives Stroup, Bowen, and Suludak approached Defendant

in her vehicle. Defendant told the detectives that she had not seen Clyde that

morning, nor had she called, texted, or spoken to him since the night before. Detective

Bowen requested Defendant’s permission to view her cell phone’s call and text

message histories in order to verify her story. But Defendant was “very hesitant” to

relinquish her phone, and she told Detective Bowen that she could not comply with

his request because her phone “was off and it was dead.” However, Detective Bowen

observed Defendant “deleting things” from her phone during their conversation.

After Detective Bowen’s conversation with Defendant, Detective Stroup requested,

 -3-
 STATE V. CRUZ

 Opinion of the Court

and the State obtained, a magistrate’s order charging Defendant with felony common-

law obstruction of justice for “withholding information from law enforcement in

reference to a hom[i]cide investigation.”

 After obtaining the magistrate’s order, Detective Stroup returned to the area

where Clyde’s cell phone last “pinged.” Detective Stroup and other deputies were

handing out Crime Stoppers “business cards” with information for individuals with

knowledge of Clyde’s whereabouts. When they saw Defendant drive by, Detectives

Stroup and Suludak got into their patrol vehicles and prepared to initiate a stop of

Defendant’s vehicle. Detective Suludak stopped Defendant’s vehicle at 3:35 p.m.

After Detective Suludak pulled Defendant over, Detective Stroup arrested Defendant

pursuant to the magistrate’s order, and transported her to the Law Enforcement

Center to interview her.

 During the interview, Defendant waived her Miranda rights. Defendant told

Detective Bowen that she had deleted some phone calls from her call history during

their conversation earlier that morning. She further admitted that she had not been

truthful when she told the detectives that she had not seen Clyde that day.

Defendant told Detective Bowen that in reality, she had driven Clyde from Shelby to

Forest City and back the previous evening, and again that morning from Shelby to

Lincolnton. Defendant also consented to a “forensic download” of her cell phone,

thereby providing law enforcement personnel full access to the device’s contents.

 -4-
 STATE V. CRUZ

 Opinion of the Court

Following the interview, Defendant was processed and released on an unsecured

bond.

 On 28 November 2015, Clyde turned himself in to the sheriff’s office, where he

was charged with first-degree murder and possession of a firearm by a felon. Clyde

was subsequently tried by a jury in a separate proceeding and was convicted of

second-degree murder and possession of a firearm by a felon.

 On 11 April 2016, Defendant was indicted for (i) accessory after the fact to a

felony, and (ii) felony common-law obstruction of justice. On 25 June 2018,

Defendant’s case came on for trial before the Honorable Lisa C. Bell in Cleveland

County Superior Court. On 27 June 2018, a jury found Defendant guilty of both

charges. On 29 June 2018, the trial court consolidated the offenses for judgment, and

imposed a mitigated sentence of 50 to 72 months in the custody of the North Carolina

Division of Adult Correction.1

 Defendant timely filed written notice of appeal.

 Discussion

 On appeal, Defendant makes three distinct arguments challenging the trial

court’s instructions to the jury. We address each in turn.

 1At sentencing, the trial court found two mitigating factors: Defendant supports her family
and has a support system in the community. The trial court found no aggravating factors, and thus,
concluded that a sentence within the mitigated range was appropriate.

 -5-
 STATE V. CRUZ

 Opinion of the Court

 Defendant initially contends that the trial court committed plain error by

instructing the jury on both the offense of accessory after the fact and the offense of

obstruction of justice. For the reasons set forth below, we disagree.

 I. Standard of Review

 This Court reviews a challenge to a trial court’s decision regarding jury

instructions de novo, and we review “the jury instructions in their entirety when

determining if there was error.” State v. Wirt, __ N.C. App. __, __, 822 S.E.2d 668,

673 (2018) (citation omitted).

 The charge will be held to be sufficient if it presents the
 law of the case in such manner as to leave no reasonable
 cause to believe the jury was misled or misinformed.
 Under such a standard of review, it is not enough for the
 appealing party to show that error occurred in the jury
 instructions; rather, it must be demonstrated that such
 error was likely, in light of the entire charge, to mislead the
 jury.

Id. (citation omitted).

 Here, however, Defendant failed to advance her arguments regarding the jury

charge before the trial court although she had several opportunities to do so.

Accordingly, she “specifically and distinctly” requests that we review for plain error.

N.C.R. App. P. 10(a)(4) (“In criminal cases, an issue that was not preserved by

objection noted at trial and that is not deemed preserved by rule or law without any

such action nevertheless may be made the basis of an issue presented on appeal when

 -6-
 STATE V. CRUZ

 Opinion of the Court

the judicial action questioned is specifically and distinctly contended to amount to

plain error.”).

 Unpreserved issues may be reviewed for plain error “when they involve either

(1) errors in the judge’s instructions to the jury, or (2) rulings on the admissibility of

evidence.” State v. Gregory, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996).

 The plain error rule is always to be applied cautiously and
 only in the exceptional case where, after reviewing the
 entire record, it can be said the claimed error is a
 fundamental error, something so basic, so prejudicial, so
 lacking in its elements that justice cannot have been done,
 or where the error is grave error which amounts to a denial
 of a fundamental right of the accused, or the error has
 resulted in a miscarriage of justice or in the denial to
 appellant of a fair trial or where the error is such as to
 seriously affect the fairness, integrity or public reputation
 of judicial proceedings or where it can be fairly said the
 instructional mistake had a probable impact on the jury’s
 finding that the defendant was guilty.

State v. Lawrence, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (citation and

internal quotation marks omitted). Moreover, “[u]nder the plain error rule, [the]

defendant must convince this Court not only that there was error, but that absent

the error, the jury probably would have reached a different result.” State v. Jordan,

333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

 II. Analysis

 Defendant first argues that the trial court committed plain error by instructing

the jury on both obstruction of justice and accessory after the fact because the

 -7-
 STATE V. CRUZ

 Opinion of the Court

enactment of N.C. Gen. Stat. § 14-7, codifying the offense of accessory after the fact,

partially abrogated the common-law offense of obstruction of justice with regard to

the conduct at issue in this case—specifically, “withholding information from law

enforcement and assisting a defendant to leave the scene of an offense.” Our Supreme

Court has previously addressed—and rejected—this very argument.

 As our Supreme Court has explained, “[o]bstruction of justice is a common law

offense in North Carolina[,]” and “Article 30 of Chapter 14 of the General Statutes

does not abrogate this offense.” In re Kivett, 309 N.C. 635, 670, 309 S.E.2d 442, 462

(1983) (emphasis added). “Article 30 sets forth specific crimes under the heading of

Obstructing Justice. There is no indication that the legislature intended Article 30

to encompass all aspects of obstruction of justice.” State v. Taylor, 212 N.C. App. 238,

245, 713 S.E.2d 82, 87-88 (emphasis added) (citation omitted), disc. review denied,

365 N.C. 342, 717 S.E.2d 558 (2011). Accordingly, Defendant’s first argument lacks

merit.

 Defendant next argues that the trial court committed plain error by instructing

the jury that obstruction of justice and accessory after the fact are separate offenses,

rather than greater- and lesser-included offenses, because they constitute the same

offense for purposes of the Fifth Amendment’s prohibition against double jeopardy.

As with her first argument, Defendant’s second argument is foreclosed by our existing

jurisprudence.

 -8-
 STATE V. CRUZ

 Opinion of the Court

 This Court has expressly held that accessory after the fact and obstruction of

justice do not constitute the same offense, and that neither is a lesser-included offense

of the other. See State v. Cousin, 233 N.C. App. 523, 537, 757 S.E.2d 332, 343, disc.

review denied, 367 N.C. 521, 762 S.E.2d 446 (2014). Indeed, as Defendant explicitly

acknowledges, these two offenses have different elements. For example, unlike

accessory after the fact, the offense of obstruction of justice “requires deceit and intent

to defraud.” Id. On the other hand, the offense of accessory after the fact “requires

that the defendant personally assisted the principal who committed the crime in

escaping detection, arrest, or punishment.” Id. Therefore, “[t]he two offenses are

distinct, and neither is a lesser[-]included offense of the other.” Id. (emphasis added).

 In the instant case, the State presented substantial evidence to support each

essential element of both of the charged offenses. At trial, the State elicited testimony

from Detectives Stroup and Bowen that ultimately supported the instruction on the

charge of obstruction of justice. Detectives Stroup and Bowen explained that when

they approached Defendant in her vehicle, she told them that she had not seen Clyde

that morning, nor had she called, texted, or spoken to him since the night before.

Detective Bowen noted that during the same conversation, he requested Defendant’s

permission to view her cell phone’s call and text message histories in order to verify

her story, but Defendant told him that she could not comply with his request because

her phone “was off and it was dead.” However, Detective Bowen testified that he had

 -9-
 STATE V. CRUZ

 Opinion of the Court

observed Defendant “deleting things” from her phone during their conversation,

which Defendant confirmed during her interview with detectives later that day, after

waiving her Miranda rights. Defendant’s actions support the element of deceit and

intent to defraud, as required for an obstruction of justice conviction. As such, the

trial court did not err by instructing the jury on the offense of obstruction of justice.

 The State also presented evidence to support the instruction on the charge of

accessory after the fact: that Defendant knew that Clyde shot and killed Borders, and

that Defendant personally rendered assistance to Clyde. See State v. Cole, 209 N.C.

App. 84, 91, 703 S.E.2d 842, 847 (setting forth the three elements of the charge of

accessory after the fact), disc. review denied, 365 N.C. 197, 709 S.E.2d 922 (2011).

 Detective Stroup testified that when he initially spoke with Defendant after

midnight on 25 November 2015, he told her that Clyde “was wanted for the homicide

of [Borders] that occurred earlier that evening” and that a warrant had been issued

for his arrest. The State’s evidence therefore demonstrated that when Defendant

drove Clyde from Shelby to Lincolnton in the morning of 25 November 2015, she knew

that there was an outstanding warrant for his arrest. Indeed, during her interview

at the Law Enforcement Center, Defendant admitted that she had not been truthful

when she told Detectives Bowen and Suludak that she had not seen Clyde that day.

Moreover, Defendant told detectives that she did not know where Clyde was, despite

having been in contact with him and having driven him multiple times. She also

 - 10 -
 STATE V. CRUZ

 Opinion of the Court

admitted that she had deleted evidence from her phone that would have alerted

detectives to communications from Clyde. Taken together, this evidence supports the

State’s contention that although Defendant was aware that Clyde was wanted for

murder in the shooting death of Borders, she nevertheless personally assisted Clyde

in escaping detection, arrest, or punishment, as required for an accessory after the

fact conviction. As such, a jury instruction on the charge of accessory after the fact

was proper.

 For these reasons, we conclude that the trial court did not err by instructing

the jury on both the offenses of accessory after the fact and obstruction of justice.

 Finally, Defendant argues that the trial court committed plain error by failing

to instruct the jury that, if it found that Defendant “reasonably believed that [Clyde]

killed [Borders] in self-defense, at the time she transported Clyde,” then “the verdict

on the accessory after the fact charge must be ‘not guilty.’ ” Specifically, Defendant

maintains that the trial court should have instructed the jury that “the fact that . . .

Defendant knew [Clyde] shot and killed [Borders] on the night of the incident does

not necessarily mean that, at the time [she] drove [Clyde] to Lincolnton and Forest

City, she knew [Clyde] had committed murder.” We disagree.

 Clyde was convicted of second-degree murder in a separate proceeding. Yet,

through her argument, Defendant implicitly asks this Court to reassess Clyde’s self-

 - 11 -
 STATE V. CRUZ

 Opinion of the Court

defense claim, which was already litigated and rejected by the jury during his trial,

and thus has no bearing upon our decision in the instant case.

 The elements of accessory after the fact are as follows: “(1) a felony was

committed; (2) the accused knew that the person he received, relieved or assisted was

the person who committed the felony; and (3) the accused rendered assistance to the

felon personally.” Id. (citation omitted). “[I]f the totality of the evidence is such to

give rise to a reasonable inference that [the] defendant knew precisely what had taken

place, then there is sufficient evidence of the knowledge element[.]” Id. (citation and

internal quotation marks omitted).

 Here, even assuming arguendo, that Defendant believed that Clyde killed

Borders in self-defense at the time that she drove him from Shelby to Forest City and

back on the night of the shooting, Defendant fails to explain her actions the following

day, when she was indisputably on notice that Defendant was wanted for murder.

Indeed, Detective Stroup testified that when he first arrived at Defendant’s home

after midnight on 25 November 2015, he asked Defendant if she was aware that Clyde

“had recently shot and killed someone[,]” and he told her that there was an

outstanding warrant for Clyde’s arrest. Notwithstanding this information, later that

morning, Defendant drove Clyde from Shelby to Lincolnton. Shortly thereafter,

however, Defendant told detectives that she did not know where Clyde was, she had

not been in contact with him since the night before, and she deleted evidence to the

 - 12 -
 STATE V. CRUZ

 Opinion of the Court

contrary from her phone. This evidence “give[s] rise to a reasonable inference that

[D]efendant knew precisely what had taken place,” id. (citation and italics omitted),

and that she personally assisted Clyde “in escaping detection, arrest, or

punishment[,]” Cousin, 233 N.C. App. at 537, 757 S.E.2d at 343.

 Conclusion

 For the reasons stated herein, the trial court did not err—let alone plainly

err—in its jury instructions on the offenses of felony common-law obstruction of

justice and accessory after the fact to a felony. Accordingly, we conclude that

Defendant received a fair trial, free from error.

 NO ERROR.

 Judges DILLON and HAMPSON concur.

 - 13 -